821 So.2d 780 (2002)
Arry D. MOODY, Plaintiff-Appellant
v.
WEATHERFORD U.S., Limited Partnership, Defendant-Appellee.
No. 35,882-CA.
Court of Appeal of Louisiana, Second Circuit.
July 17, 2002.
*781 S.P. Davis, Shreveport, for Appellant.
David M. Whitaker, New Orleans, for Appellee.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
WILLIAMS, Judge.
The plaintiff, Arry Moody, appeals a judgment in favor of the defendant, Weatherford U.S., Limited Partnership ("Weatherford"). The district court granted Weatherford's motion for summary judgment, dismissing plaintiffs claims of discrimination and wrongful discharge. For the following reasons, we affirm.

FACTS
Arry Moody began working for Weatherford in July 1986 as a dispatcher and was promoted to district manager in September 1987. Weatherford operates oil-field equipment rental facilities in Louisiana and Texas. In February 1991, Moody, who is black, was demoted to the position of assistant district manager, or "location supervisor," of Weatherford's rental office in Arcadia, Louisiana. At that time, Lonnie Oswald, a white male, became manager. Moody's primary duties were to assist the manager with the daily operations of the store, including the preparation of *782 equipment for use in the field. In January 1993, Moody applied for the position of district manager, but was not hired. In January 1999, he again applied for the manager position, but Weatherford hired Malcolm Sneed, a white male. In May 1999, Moody applied for the position of field sales representative, but he was not hired.
In December 1999, Moody filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been demoted, denied promotions and subjected to disparate conditions of employment as a result of racial discrimination by his employer. In response, Weatherford submitted a "Position Statement" to the EEOC denying Moody's allegations of racial discrimination. In January 2000, the EEOC issued a "Dismissal and Notice of Rights," informing Moody that the EEOC was unable to conclude that the information obtained established violations of the statute.
On March 6, 2000, Moody approached Sneed and asked to review his personnel file. Sneed told Moody that the personnel files were not kept at the Arcadia office, but were located at Weatherford's human resources department in Houma, Louisiana, under the supervision of Frank Streva. The policy regarding maintenance of personnel files is stated in Weatherford's employee handbook. Sneed explained that Moody could not arrange to see his file that day because Streva was on vacation. Moody responded by giving two weeks notice of his resignation. Sneed declined the notice and accepted Moody's resignation as effective that day. However, Weatherford paid Moody an additional two weeks of salary at his regular rate of pay.
Subsequently, the plaintiff, Arry Moody, filed a petition for damages against the defendant, Weatherford, alleging that he was demoted and denied promotions because of his race, that he was wrongfully discharged after requesting to see his personnel file and that his termination was based on his race and his prior filing of a discrimination complaint with the EEOC. The defendant filed an exception of prescription seeking dismissal of plaintiffs claims based on his demotion and lack of promotion. After a hearing, the district court entered judgment dismissing the claims as prescribed. Subsequently, the defendant filed a motion for summary judgment seeking dismissal of the remaining claims. After hearing argument by the parties, the district court granted the motion and rendered judgment dismissing Moody's action. Moody appeals this judgment.

DISCUSSION
Moody contends the district court erred in granting the motion for summary judgment. He argues that a genuine issue of material fact exists as to whether the defendant intentionally discriminated against him by changing his work activities and by refusing to allow him to review his personnel file and to work for the two weeks after his notice of resignation.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
*783 The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Employers may not intentionally refuse to hire, discharge or otherwise intentionally discriminate against any individual with respect to his compensation or the terms or conditions of employment on the basis of race, color, religion, sex or national origin. LSA-R.S. 23:332. Because the Louisiana and federal anti-discrimination statutes are similar in scope, courts may consider federal jurisprudence when construing state law. Hicks v. Central Louisiana Electric Co. Inc., 97-1232 (La. App. 1st Cir.5/15/98), 712 So.2d 656.
The plaintiff must establish by a preponderance of the evidence a prima facie case of racial discrimination. In the present factual situation, the elements of a prima facie case are that (1) the plaintiff is black; (2) he was qualified for the position; (3) he was discharged, either actually or constructively; and (4) the position remained open and was ultimately filled by a white male. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Plummer v. Marriott Corp., 94-2025 (La.App. 4th Cir.4/26/95), 654 So.2d 843.
In the present case, Moody has shown that he is a black individual who was qualified for the position of assistant manager. The defendant moved for summary judgment alleging in part that Moody resigned from his job and so he could not show that he was discharged. Defendant submitted the affidavit of Malcolm Sneed, the district manager of Weatherford's Arcadia facility and Moody's supervisor. Sneed testified that Moody's primary duty was to assist with the daily operation of the facility, including the performance of manual tasks such as the cleaning, repair and loading of oil field tools and equipment as needed. Sneed stated he also performed such tasks on occasion.
Sneed testified that Moody had also assisted service representatives working at job sites when the customer requested the services of two Weatherford workers and another service representative was unavailable. On those occasions, Moody was paid a commission bonus in addition to his salary. Sneed stated that company payroll records showed that Moody performed such field work for five days in the period from December 1998 through February 1999, for two days in March and April 1999, for zero days from May through July 1999 and for six days in August and September 1999. Moody was not assigned any field work from October 1999 through his last day on the job.
Sneed testified that on March 6, 2000, in response to Moody's request to see his personnel file, he explained that the files were not in his possession, but were kept at Weatherford's human resources department in Houma. Sneed stated that when he told Moody that he could not arrange to see his file that day because Streva was on vacation, Moody responded by submitting his two weeks notice. According to Sneed, he asked where Moody would be working and that Moody replied he was going to work for a competing company. Sneed then declined Moody's offer to work another two weeks and accepted his resignation, effective immediately. Sneed testified *784 that Moody was paid two additional weeks of salary after his last day at work.
In his deposition and affidavit, Moody acknowledged that after being told he would not be able to review his personnel file that day, he tendered his resignation. In his deposition, Moody testified that on March 6, 2000, he gave Sneed "two weeks notice that I was going to leave." Moody stated in his affidavit that he submitted the notice "to resign his employment," but he "intended to continue to physically work for defendant" for two more weeks.
Moody contends he was entitled to physically work at the defendant's facility during the two weeks after he submitted notice of his intended date of resignation, and that he was essentially discharged or terminated from his employment when Sneed denied him that opportunity. However, the authority cited by Moody does not show that defendant was obligated to allow Moody to report to work once he stated his intention to end his employment. To the contrary, pursuant to LSA-C.C. art. 2747, either Moody or defendant could have terminated the at-will employment relationship at any time for any non-discriminatory reason. In addition, Moody did not demonstrate that he was damaged by defendant's act, since he was paid the same salary he would have received if he had been allowed to report to work. Thus, the record shows that Moody resigned his position and was not discharged by the defendant. Consequently, he cannot establish a prima facie case of racial discrimination.
Even if we were to assume that Sneed's refusal to allow Moody to work an additional two weeks amounted to a discharge, Moody still bore the burden of proving that the defendant acted with the intent to discriminate. Plummer, supra. In his affidavit, Moody alleged that Sneed and regional manager Steve Brown discriminated against him by refusing to allow him to immediately review his personnel file and work for two additional weeks.
In support of his allegations, Moody submitted the affidavits of Herbert Womack and Robbie Copeland. Womack testified that when he was district manager of the Arcadia facility from November 1992 through late 1998, the personnel files of Moody and other employees were kept on the premises and that he allowed Moody to review his file upon request. However, Womack's description of his practice regarding personnel files during his tenure does not contradict Sneed's testimony that in March 2000, Moody's personnel file was located in defendant's human resource department in Houma. Nor does the record indicate that Sneed treated Moody differently from other employees concerning the access to personnel files. Thus, Womack's affidavit does not support the allegation that Sneed acted in a discriminatory manner.
Moody contends Copeland's affidavit raises a factual issue regarding the racial prejudice of Sneed and Brown. Copeland testified that he became personally acquainted with Sneed and Brown while working as a salesman for the defendant from early 1996 to late 1999. According to Copeland, Sneed and Brown "personally told him that they did not promote Arry Moody to District Manager because he is black," despite his qualifications. We note that Copeland's affidavit is vague concerning the circumstances surrounding the discriminatory statement and does not specify when it was purportedly made. Additionally, Copeland does not explain how Sneed could have participated in discrimination by denying Moody a promotion to district manager before Sneed himself was hired for the position in January 1999. Although Copeland's affidavit asserted that Sneed and Brown made a racially *785 biased statement, to provide sufficient evidence of discrimination, such comments must be (1) related to the protected class of which plaintiff is a member; (2) proximate in time and (3) related to the employment decision at issue; and (4) made by an individual with authority to make such a decision. Krystek v. Univ. of Southern Mississippi, 164 F.3d 251 (5th Cir.1999).
Here, Moody failed to establish when the statement was uttered. The testimony indicated that the last decision to hire a district manager occurred in January 1999, suggesting that the comment was made more than one year prior to Moody's notice of resignation in March 2000. In addition, the remarks are not related to the employment decision at issue, Sneed's act of accepting Moody's resignation and not allowing him to work further. Thus, the comments described in the affidavit do not provide sufficient evidence that Sneed or Brown acted with the intent to discriminate on March 6, 2000.
Moody also contends that after he filed a complaint with the EEOC in December 1999, the defendant discriminated against him by changing his duties from administrative tasks to manual labor and by denying him opportunities to work in the field to earn extra income. However, Moody acknowledged in his deposition that he had been required to perform physical labor, in addition to his administrative tasks, during the time period preceding his complaint to the EEOC. Moody also stated that Sneed performed such labor when necessary.
Similarly, the affidavit and deposition testimony show that even prior to filing a charge with the EEOC, Moody experienced periods of two to three months during which he was not assigned to assist the service representatives with field work and earn a bonus. In addition, Moody acknowledged that he did not speak with Sneed to request additional field work assignments either before or after he filed the EEOC complaint. Thus, the evidence submitted does not support Moody's contention that his job duties were changed and he was deprived of opportunities to earn extra income as a result of discrimination following his complaint to the EEOC.
Based upon this record, we must conclude that Moody has failed to produce evidence which would satisfy his burden of proving that he was discharged when Sneed accepted his resignation or that more probably than not the defendant's agents intentionally discriminated against Moody because of his race by altering the conditions of his employment. Consequently, we cannot say the district court erred in granting the motion for summary judgment. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the district court's judgment granting the motion for summary judgment is affirmed. Costs of this appeal are assessed to the appellant, Arry Moody.
AFFIRMED.