|.MOORE, J.
Tisha C.L. Lensey (“Lensey”) appeals a judgment rendered with written opinion by the First Judicial District Court dated April 29, 2002, affirming an August 15, 2001, ruling of the Shreveport Municipal *1034 Fire and Police Civil Service Board (“Board”), which ruling determined that Lensey’s termination from the Shreveport Police Department was in good faith and for cause. Finding inadequate evidence for cause, we reverse the termination of Lensey, amend her punishment to a 90-day suspension without pay or benefits, re-institute her pre-termination employment as a Shreveport Police Officer, with back pay and all associated employment benefits following the 90-day suspension period.

Factual background

The following facts were established at the Board’s hearing in August, 2001.
On December 27, 2000, Lensey, while off-duty and in civilian clothing, drove her cousins Kenneth and Ronald Allen, and Melody Wright to the Shreveport bus terminal for Kenneth to catch a bus. Learning that they had missed the bus, Lensey drove the group to the Bossier City terminal in hopes that Kenneth could catch his bus there. Testimony at the Board hearing reflected that Kenneth and Ronald had been drinking alcoholic beverages when they arrived at the Bossier City bus terminal.
Kenneth then boarded his bus but became involved in an altercation with the bus driver, Raymond Trejo. In response to the altercation, the Bossier City Police were dispatched to the bus terminal to investigate; Officer Thomas Delrie (“Del-rie”) was first to arrive, followed by Officer LMike Williams (‘Williams”) and then by Sergeant Jim Viola (“Viola”).
Delrie testified that once he arrived at the scene, and before he could speak with Trejo, the battery complainant, Lensey approached him and identified herself as a Shreveport police officer. She also identified the accused assailant, Kenneth, as her fiancé and the other man, Ronald, as her fiancé’s brother, and told Delrie that neither man had done anything wrong. Del-rie testified that Lensey was talking loudly and was insulting to him by stating that she knew the law and what Delrie could do, and what she could do in responding to this incident. Delrie further testified that within moments Williams and Viola arrived and began speaking with Lensey, which allowed him to speak to Trejo concerning the alleged battery.
Delrie further testified that following his interview with Trejo, Trejo did not want to file battery charges against Kenneth, but wanted Kenneth off his bus. During this time, Williams made arrangements for Kenneth to catch a later bus. Then all three officers instructed Kenneth, Ronald, Melody and Lensey to get into Lensey’s car and leave. Kenneth, Ronald and Melody complied, but Lensey remained outside of her car in a roadway.
Viola then requested Lensey to leave the street area and speak with Williams, who would advise her of the resolution achieved between Trejo and Kenneth. However, Lensey refused to speak to Williams despite several requests by Viola and Delrie. Thereafter, Viola requested that Lensey get in her car and leave but she again refused. At this point, Viola placed Lensey under arrest for “interfering with an officer.”
| oViola further testified that before he arrested Lensey she was “hollering” and “screaming” at him, trying to tell him what had happened between Kenneth and Trejo, but that she was not using any foul or obscene language.
Lensey was then placed in Delrie’s police car and transported by Delrie to the Bossier City Police Department, where she was processed for her arrest.
Lensey testified that when Delrie arrived at the scene, he asked her what had occurred and she identified herself as a Shreveport Police Officer who had wit *1035 nessed the incident.- Delrie commented to her that he had applied to the Shreveport Police Department and they refused him a position. Lensey testified that Delrie seemed angry about it. Lensey testified that she stood about 15 to 20 feet away from Delrie when he got Kenneth out of her car and began to verbally abuse him for assaulting Trejo. Lensey added that Kenneth and Delrie also argued over the whereabouts of Kenneth’s baggage, which was on the bus that had already left the terminal.
Lensey also Testified that she spoke to Viola regarding Delrie’s bad attitude towards her and her family and that she was filing a complaint against Delrie; Lensey testified that in reply, however, Viola cut her off and instructed her to go speak with Delrie, which Viola knew she would not do, in view of the circumstances. Finally, Lensey testified that she never spoke to Officer Williams.
Lensey also testified that after Delrie placed her in his unit, he made sexist and racist comments to her. She admitted that she then began to curse |4him. Delrie denied making any sexist or racist statements. No other witness corroborated Lensey’s accusations. Delrie did testify that Lensey called him an idiot, racist, and accused him of having a vendetta against the Shreveport Police Department. Delrie also denied telling Lensey about his failed attempt to join the Shreveport Police Department, but admitted he did apply some years ago, but was turned down because he scored too high on the psychological examination.
Ronald testified at the hearing that he witnessed Delrie exhibit a cocky and rude demeanor towards Kenneth, and that Del-rie used profanity in speaking to Kenneth. Ronald also testified that he and Kenneth had been drinking, but were not drunk.
Some seven hours after Lensey had been first transported to the Bossier City Police station, Lieutenant Robert Dowell (“Dowell”), of the Shreveport Police Department, arrived at the Bossier City jail to have Lensey released to him. Dowell testified that although Lensey appeared upset from having to spend the night in the Bossier City jail, Dowell was even more upset about the Bossier Police Department’s decision to arrest Lensey on the subject facts. Dowell went on to testify that if the same events had occurred in Shreveport with an off-duty police officer, a physical arrest would have not been made; rather, a summons would have been issued. Dowell further testified that he was instructed by his superior to go and pick up Lensey from the Bossier City jail and return her to the Shreveport Police station to the Internal Affairs Bureau (“Bureau”) to investigate the complaints pending against Lensey generated by the |Rarresting officers in Bossier City.
Dowell testified that the arresting officer filed a complaint against him for not calming Lensey down when Dowell came to retrieve her from the jail. Dowell concluded that, to his knowledge, the complaint against him was not being pursued. Delrie denied filing a complaint against Dowell, but testified that he did complain to his supervisor about Dowell’s passive attitude towards Lensey’s rude demeanor at the jail. Lensey admitted telling jailers that she considered Delrie incompetent for his handling of the incident at the bus terminal.
On December 29, 2000, just two days after Lensey’s arrest, she called the Traffic Clerk’s office with the Bossier City Police Department and spoke with clerk Felicia Howard (“Howard”). Howard testified at the Board hearing that Lensey identified herself on the telephone as a Shreveport Police Officer that had been arrested in Bossier City. Lensey wanted a copy of her incident report. Howard then *1036 advised Lensey that she had the requested report and she would fax Lensey a copy, which she did. Howard testified that although her office usually charges $5.00 for a copy of an incident report, she did not charge Lensey for the full report, as a routine police courtesy.
The City of Shreveport’s Chief of Police, Jim Roberts (“Chief Roberts”), testified at the Board hearing that he reviewed the entire record of the Bureau complaint and investigation relative to Lensey, and that following his review and consideration, he terminated Lensey on the following grounds:
Ifil. That Lensey’s conduct in Bossier City at the bus terminal was unbecoming conduct of a Shreveport Police officer; and
2. That Lensey abused her position as a Shreveport Police officer to obtain a copy of her incident report from the Bossier City Central Records Department.
Chief Roberts testified that prior to this incident Lensey had no discipline or performance problems or complaints. Lensey had been employed with the Shreveport Police Department since August 1999, and thus had permanent status as a civil servant.
At the conclusion of the Board hearing, the Board rendered a decision that the appointing authority, Chief Roberts, acted in good faith and for cause in the termination of Lensey and upheld Lensey’s termination.

Discussion: Sufficiency of the Evidence

The appropriate standard of appellate review of the actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service. La. Const. art. X, § 8; Newman, supra; Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962); Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984); Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641; Laborde v. Alexandria Municipal Fire & Police Civil Service Bd., 566 So.2d 426 (La.App. 3 Cir.), writ denied, 568 So.2d 1055 (1990).
In civil service cases, an appellate court is presented with a multifaceted review function. See, Walters, supra; Bannister, supra, at 647. First, as in all civil matters, deference will be given to the factual conclusions of the Commission. Walters, supra; Newman, supra; Bannister, supra. Hence, in deciding whether to affirm the Commission’s findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Walters, supra; Bannister, supra; see also, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. See, Walters, supra; Newman, supra; Bannister, supra; cf. La. R.S. 49:964. “Arbitrary or capricious” means the absence of a rational basis for the action taken. Bannister, supra, and citations therein; Shields v. City of *1037 Shreveport, 579 So.2d 961(La.1991), citing Bicknell v. United States, 422 F.2d 1055 (5th Cir.1970).
Employees with permanent status in the classified civil service may be disciplined for cause expressed in writing.[1] La. Const. art. X, § 8(A); R.S. 33:2500 D. “Cause” for the dismissal of such a person includes |sconduct prejudicial to the public service involved or detrimental to its efficient operation. Bannister, supra; Walters, supra. Stated differently, disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister, supra; Newman, supra; Laborde, supra.
“Complaints, publicity and gossip in themselves do not constitute legal cause for discharge. Notoriety is something a police officer, or any public employee, or official for that matter, cannot control. There must be more than mere notoriety, for that in and of itself proves nothing.” Reboul v. Department of Police, 420 So.2d 491, 495 (La.App. 4 Cir.1982).
Lensey asserts two main arguments in her appeal: (1) that there was insufficient evidence adduced at the Board’s hearing to show that her off-duty conduct in Bossier City had a real and substantial relationship with and impairment of the efficient operation of the Shreveport Police Department to justify her termination in good faith and for cause; and (2) the district court erred in not finding that Lensey produced sufficient evidence that she was discriminated against in her termination.
In her first argument, Lensey asserts that the findings of the Board were not supported by the showing made by the City of Shreveport (“the City”) that her conduct in Bossier City, while off-duty, impaired the efficient operation of her employer, the Shreveport Police Department or violated any policies or rules of the Shreveport Police Department concerning off-duty conduct.
|9In considering the showing made by the City at the Board hearing, Chief Roberts, the appointing authority, testified as follows:
Mr. Jones: Why did you terminate Ms. Lensey?
Chief Roberts: Ah, basically unbecoming conduct of a Shreveport Police Officer. Ah, and abuse of her position to obtain offense reports from Bossier City Central Records Department.
Mr. Jones: Why do you feel like what they’ve heard today supported your actions? What led you to the termination?
Chief Roberts: Well it was just a review of the entire situation that night. Ah, we had apparently some people that had been consuming alcohol. They were left in Shreveport apparently they purchased a ticket and missed the bus in Shreveport for whatever reason. I don’t know. Ah. Followed this bus to Bossier City ah in a confrontation with some of passengers vehicle became ah in a confrontation with the bus driver on this particular bus. Simple battery occurred, a fight ensued. Sound like the situation got out of hand. And then Ms. Lensey interjects herself into it and creates an additional disturbance and apart from what the Officers were trying to work and work out and of course bring the Shreveport Police into the mix. I think her conduct was unbecoming and not what I expect of a *1038 Shreveport Police Officer. (Civil Service transcript pages 53-54).
Lensey testified that she never interfered with the investigation carried out by the Bossier City officers. In fact, Lensey testified that she stood back and observed the incident from the start to the finish, which lasted about 45 minutes. When asked why she identified herself as a Shreveport Police Officer, she testified that since she was a witness to the events, she wanted the Bossier City officers to accept her recitation of the facts as credible. Lensey testified that even though Viola had placed her under arrest, she heard Delrie verbally order the arrest. She testified that she was only asked to get in her car one time, but before she could do so, Imshe was detained by Delrie for information and subsequently arrested.
The district court found that the fact that Lensey was off-duty did not justify or excuse her conduct, particularly in light of the fact that she continued to bring up the fact that she was a Shreveport Police Officer. The district court went on to state that under R.S. 33:2500, Chief Roberts may take such disciplinary action as the circumstances warrant in the event of “conduct of a discourteous or wantonly offensive nature to the public, any municipal officer or employee” and for “disgraceful” conduct. The court then concluded that, without doubt, there existed substantial evidence in the record that Lensey manifested conduct of a “discourteous or wantonly offensive nature to a municipal employee.”
On the instant record, the Board and the trial court were entitled to find that Len-sey’s conduct at the Bossier City bus terminal and at the Bossier City jail was discourteous, offensive and improper. Likewise, it may be concluded that Len-sey’s call to the traffic clerk for the Bossier City Records Department two days after her arrest was also improper, to the extent Lensey sought and obtained a free copy of her incident report based on a police courtesy. The later conduct is mitigated by the testimony of Howard, who testified that she freely extended the courtesy copy to Lensey with the knowledge that Lensey was the arrested party in the incident report.
The issue therefore is whether the City demonstrated by a preponderance of the evidence that Lensey’s discourteous or wantonly offensive conduct in violation of R.S. 33:2500 A(5), did in fact, impair the otherwise efficient operation of the Shreveport Police Department, which is hia mandatory showing for cause when terminating civil service employees. La. Const. art. X, § 8; Newman, supra; Leggett, supra; Walters, supra; Bannister, supra; Laborde, supra.
The only evidence to support the City’s burden of proof was the testimony of Chief Roberts. He expressed the opinion that Lensey’s conduct at the Bossier City bus terminal, Bossier City jail and with the traffic clerk, Howard, constituted unbecoming conduct of a Shreveport Police Officer and was an abuse of Lensey’s power as a Shreveport Police Officer. When asked exactly why he terminated Lensey, he replied very simply that Lensey’s conduct in declaring she was a Shreveport Police Officer during the incident investigation by the Bossier City Police Officers, and rudely interjecting her professional opinion as to the incident, necessarily threw the Shreveport Police Department into “the mix” of the bus terminal investigation. Chief Roberts concluded that he believed Lensey’s display was unbecoming and not what he expected from one of his officers.
No witness other than Chief Roberts testified that Lensey’s conduct impaired the efficient operation of the Shreveport *1039 Police Department. Thus, his testimony is pivotal as to this essential showing.
On close review, we find this evidence insufficient to prove that Lensey’s conduct impaired the efficient operation of the Shreveport Police Department. The jurisprudence delineates what kind of conduct must be proved to make an adequate showing of impairment.
In Leggett v. Northwestern State College, supra, Leggett was employed as a college watchman at Northwestern State College, which required him to counsel with student couples, and in the event of improper conduct, to take them to the appropriate dean for review; to exercise discretion in his relations with the students, and to maintain their respect. Leg-gett was fired for operating a business in downtown Natchitoches, which business was found by the Civil Service Commission to be a house for prostitution. The Commission found that it would be detrimental to the efficiency of Leggett’s service as a watchman at the college to retain him as such. Id. at 940, 140 So.2d 5.
In Newman v. Department of Fire, supra, Newman was a veteran firefighter with the rank of captain. While on-duty, Newman left the firehouse unannounced with another firefighter to obtain a meal and was gone for almost two hours. While Newman was away, his unit was called to an alarm and was under-manned due to his absence. Newman was demoted in rank and cited for failure to notify in case of absence, absence without permission and failure as a captain to enforce discipline and to maintain efficiency. The Court concluded that the testimony proved, beyond the cited violations, that his actions dangerously reduced the manpower level and efficiency of the station unit in violation of the department policy, and in violation of his duty as a fire captain and unit commander. The Court added that only refusing to fight a fire would be considered a greater dereliction of duty. Id. at 755.
Similarly, in McIntosh v. Monroe Mun. Fire, Etc., 389 So.2d 410 (La.App. 2 Cir.1980), a fireman was discharged because he had been arrested three times and convicted twice in 28 months for the offense of DWI. McIntosh was off-duty, but was required to be on-call at all times. McIntosh’s dismissal was confirmed by this court, which concluded that “obviously there is a real and substantial relationship between the rule prohibiting intoxication of an off-duty, on-call fireman and the public service offered by the fire department[.] The on-call requirement is patently necessary in the case of emergencies and catastrophes, and a fire department should be able to maintain themselves in a reasonable state of readiness and efficiency even though off-duty.” Id. at 413.
Also, we find in Powell v. Alexandria Fire & Police, 476 So.2d 1109 (La.App. 3 Cir.), writ denied, 479 So.2d 362 (1985), that a police officer was suspended for four days after being involved in a traffic accident. Prior to the accident, he received a radio call summoning him to back up a primary unit responding to a disturbance about four miles from his location. The court found legal cause for the police officer’s suspension, noting that his conduct, failing to insure that the intersection was clear before proceeding through a red light, impaired the efficient operation of the department by preventing him from completing his assignment. Id. at 1111.
In Shields v. City of Shreveport, supra, two Shreveport Police officers were terminated in good faith and for cause when, by their own admissions, they were found in violation of several departmental regulations while performing security duty at a high school reunion party in Shreveport, while [14in uniform and armed. The officers admitted to leaving the duty premises *1040 two times to purchase alcohol. They left the premises without notifying a superior, consumed alcohol and fell asleep, all while being paid to perform a security service. The court found that the officers’ conduct posed a serious danger to the safety of others, that the disciplinary action was taken for valid legal cause and that the officers were properly removed from the civil service. Id. at 964, 965.
Similar in facts to Lensey are the Third Circuit off-duty police cases of Laborde, supra, and Thibodeaux v. City of Opelousas, 97-1574 (La.App. 3 Cir. 7/22/98), 717 So.2d 254, writ denied, 98-2768 (La.12/18/98), 731 So.2d 277. Both cases deal with intoxicated off-duty police officers who were involved in reprehensible conduct. Laborde involved an Alexandria police officer and member of the DWI Task Force, who became intoxicated while off-duty and drove his car away from a bar at 2:30 a.m. After speeding through the City of Pineville, with Pineville police officers in pursuit, Laborde’s car came to rest on the grounds of the Central Louisiana State Hospital, after driving over handrails, shrubbery and striking an air conditioning unit. When the Pineville police officers made contact with Laborde, he identified himself as a police officer; he was arrested for DWI, after which the City of Alexandria terminated him. This action was upheld by the Board and trial court. Id. at 428, 429.
At the Board hearing in Laborde, when asked why he recommended that Laborde be terminated from employment, Chief of Police Glen Beard responded:
|1S“I just felt like it was conduct unbecoming an officer and I felt I didn’t want people like that representing the police department, and I feel I have a responsibility to the police department and it was my judgment to recommend that to the mayor.” Id. at 431.
The court of appeal held that when La-borde’s accident and subsequent arrest occurred, Laborde was off-duty and driving his own personal vehicle. He was not on patrol as a member of the Alexandria Police Department DWI Task Force. Id. The City produced no evidence whatsoever which tended to prove that Laborde’s conduct was detrimental to the efficient operation of the police department or violated any rules or regulations concerning off-duty conduct of a police officer. Id. at 432. The Third Circuit reversed Laborde’s termination.
In Thibodeaux, an intoxicated off-duty Opelousas police officer ran off the road outside the city limits of Opelousas, left the scene on foot and entered a home without the consent of the owners around of 2:30 a.m. The owners were awakened by Thibodeaux at their bedroom door. Thibo-deaux pulled out his police badge and announced he was a police officer responding to a 911 call from the house, which was, of course, untrue. The owners called the Opelousas Police Department to verify the alleged call and there was no record of any such call being made. In the meantime, the Opelousas Police Department was called to the scene of Thibodeaux’s truck, finding his revolver on the truck seat. Not knowing what had happened to Thibo-deaux, the Opelousas Police began an investigation which led them to Thibodeaux, who appeared intoxicated. He was consequently arrested for reckless driving and DWI. The City of Opelousas terminated Thibodeaux. Relying on Laborde, the trial court reversed the ^Board’s decision to terminate, finding that Thibodeaux’s actions, although embarrassing to the Opel-ousas Police Department, did not give rise to a termination from employment. Furthermore, the trial court found that Thibo-deaux’s off-duty actions did not affect the efficient and orderly operation of the Opel-ousas Police Department and that the Board failed to make a showing of any *1041 impairment, citing Laborde, supra, at 255, 256 and 258.
In distinguishing Laborde, the Third Circuit Court in Thibodeaux, pointed out that “In Laborde, we held ‘[t]here is no evidence in the record which we can conclude that his actions impaired the operation of the Alexandria Police Department or violated any policies or rules or regulations concerning off-duty policemen.’ Laborde, 566 So.2d at 432. In Laborde, it was the City of Pineville’s police department that was primarily disrupted by La-borde’s misconduct, unlike here, where the Opelousas Police Department, of which Thibodeaux was a member, had to respond to his drunken misconduct and the chaos it created.” The court concluded, “It goes without saying that the use of department resources to deal with this complaint, perform these investigations, locate Thibo-deaux, and require off-duty police officers to come to work in the middle of the night is, of necessity, detrimental to the department’s otherwise efficient operation.” Id. at 259. “Therefore, we find that Thibo-deaux’s conduct on the night in question was clearly contrary to La. R.S. 33:2500 A(3) and (15). Further, that it was ‘detrimental to [the police department’s] efficient operation,’ and thus met the guidelines of Walters, 454 So.2d 106. Also, ‘there was a real |17and substantial relationship between the improper conduct and the “efficient operation” of the public service,’ thus meeting the guidelines of Bannister, 666 So.2d 641, for there to be cause for Thibodeaux’s dismissal.” Id. at 260.
As was found in Laborde, supra, we find no evidence in the record which would allow us to conclude that Lensey’s conduct impaired the efficient operations of the Shreveport Police Department. More specifically, as was the case in Laborde, Lensey, at the time of the bus terminal incident, was off-duty and in Bossier City. Bossier City police officers were the investigating and arresting officers, and there is no evidence whatsoever that the Shreveport Police Department participated in the investigation or arrest or assisted in calming the brouhaha at the Bossier City bus terminal. The only resource diverted from the Shreveport Police Department was Do-well being sent to the Bossier City jail to retrieve Lensey.
To the extent the Board in its discretion affirmed Lensey’s termination, the harshest measure of discipline, for her infractions, after the City and Roberts failed to demonstrate any showing of impairment to the efficient operation of the Shreveport Police Department, said affirmance is mandatorily deemed arbitrary and capricious and a manifestly erroneous basis for cause for her dismissal. See, Walters, supra; Newman, supra; Bannister, supra; Shields, supra; Laborde, supra; and Pearson v. Municipal Fire and Police Civil Service Bd. for the City of Shreveport, 609 So.2d 1038 (La.App. 2 Cir.1992).
11sThroughout our jurisprudential history, there are many cases clearly distinguishable from Lensey’s where the conduct of the civil service employee was demonstrated by a preponderance of the evidence by the Board to have, in fact, impaired the efficient operation of the public service.
This is not a matter of a reviewing court overruling a decision of a Board merely because we disagree with the severity of the penalty imposed; rather we find the City failed to meet its required burden of proof. See, City of Shreveport v. Willis, 33,680, (La.App. 2 Cir. 8/25/00), 765 So.2d 1245; Pearson, supra. On the record before us, we will amend the penalty to the maximum allowed by statute, 90 days without pay or benefits. La. R.S. 33:2500 B. Judgment will be rendered accordingly.
In her second argument before this court, Lensey maintains that the district *1042 court erred when it concluded that she failed to produce evidence of discrimination by the City resulting from her termination. The district court concluded that Lensey failed to make any showing of discrimination by the City.
Inasmuch as this court is reversing the action of the Board, her claims for discrimination are moot. Nevertheless, the burden of proof to establish a prima facie case of discrimination requires proof that (1) she is black; (2) she was qualified for the position; (3) she was discharged, either actually or constructively; (4) the position remained open and was ultimately filled by a person of the majority race. See, Moody v. Weatherford U.S., 35,882 (La.App. 2 Cir. 7/17/02), 821 So.2d 780, 783. Lensey simply failed to offer any evidence to meet this burden; her claim would therefore fañ. See, Moore v. Ware, 01-3341 (La.2/25/03), 839 So.2d 940. This assignment of error is moot and lacks merit.

Conclusion

For the foregoing reasons, the evidence does not support a finding of good faith or legal cause for the City’s termination of Lensey. We therefore reverse her termination and amend the punishment to the statutory maximum period of suspension for 90 days without pay or benefits, as provided in La. R.S. 33:2500 B. We render judgment awarding Lensey full pay and benefits from the date of her reinstatement, together with legal interest thereon until paid. We affirm the district court’s judgment dismissing Lensey’s claims for discrimination. The cost of this appeal in the amount of $389.60 is cast on the City. La. R.S. 13:5112.
REVERSED IN PART, AMENDED AND RENDERED.

. The actual written notice given to Lensey does not appear in the instant record but at the hearing, Lensey’s counsel conceded that written notice had been received.