DREW, J.
|T Corporal Kim Atchison, a nine-year veteran of the Monroe Police Department (“MPD”), was terminated by Chief Ron Schleuter on June 10, 2008, for numerous violations of the sick leave policy, the off-duty/log-out policy, and for untruthfulness. The Monroe Municipal Fire and Police Civil Service Board upheld the termination on a 3-1 vote. La. R.S. 33:2501. Atchison appealed her termination to the Fourth Judicial District Court. La. R.S. 33:2501(E).
The district court found that termination was excessive discipline and disproportionate to the sanctions received by other similarly situated MPD officers. However, the district court affirmed Atchison’s firing, holding that the civil service board’s decision was in good faith and based upon cause. The trial court believed it lacked authority to modify the imposed discipline to a lesser one.
Because the decision of the trial court was based upon an erroneous interpretation of its authority, we amend that portion of the trial court’s judgment which affirmed Atchison’s termination. We affirm *876 the judgment as amended and adopt the trial'court’s detailed written reasons (“Ruling Regarding Civil Service Appeal”), attached hereto as an appendix and made a part of this opinion. The amended penalty imposed upon Atchison is the maximum provided by La. R.S. 33:2500(B), 90 days without pay or benefits.
^EVIDENCE AND TESTIMONY
Chief Schleuter testified that Atchison was terminated for 27 violations of sick leave policy, not calling out[1] on off-duty jobs and lying to the chief in his office when she stated that she never called to log out after working off-duty jobs. Further investigation showed that Atchison had called out over 100 times during her employment. The chief stated that her termination was based upon the combination of the violations. In addition, the chief and the board’s attorney discovered over 10 additional occasions when she worked off-duty and had not called out.
On cross-examination, the chief acknowledged incidents involving other officers who had lied but were not terminated. The chief sought to distinguish the situations by the severity and number of her violations.
Because she was untruthful, the chief stated at the civil service board hearing that Atchison was of no use to the MPD under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). False statements made under oath adversely affect the credibility of officers testifying at trials. Giglio, supra. Atchison’s statements to the chief during the internal affairs investigation were not made under oath. The chief stated Atchison was an exemplary officer for her first two or three years, but she then went downhill. The record showed this was her first disciplinary proceeding.
Since 2004 there had been 10 cases of officers lying during internal affairs investigations. Some of those persons were not terminated and the 1 ^policy for violations of the lying prohibition was described as “loose.” Due to Atchison’s number of violations, the chief decided to draw the line and not tolerate her conduct. In January 2008 the chief imposed the new termination policy for lying. No written policy was issued because, in the chiefs view, the truthfulness rule was clear in the policy and procedure manual. When other changes in MPD policy were made, a written notice of the modification was distributed and signed by each individual police officer.
Chief Schleuter testified that the sick leave policy provided that an officer out “for more than three (3) days in a quarter due to illness” was ineligible to work off-duty that quarter and the next quarter, although he/she had the right to petition the chief for permission to work off-duty. A stated exception to the policy was “(This excludes absences due to major or extended illness and/or injury.)” The policy did not define “major or extended illness and/or injury.”
On cross-examination, the chief ambiguously answered questions relative to MPD officers who are out on sick leave:
• Exactly when did a “sick leave” situation morph into a “major or extended illness and/or injury” situation?; and
• How many days of sickness were necessary before sick MPD officers were considered to be in a “major illness” situation?
The chief testified that most reasonable and prudent people would consider a ma *877 jor illness a heart attack or cancer. In his opinion, a cold or 4-5 or 10 days would not be a major illness. Atchison’s six-month absence for a knee injury was considered a major injury. The chief declined to name |4the number of days an officer had to be out for a major illness, stating that was “totally up to administrative discretion.” Specifically, the chief stated if an officer was shot in the line of duty, had a heart attack, had cancer “or whatever,” they gave consideration. Atchison had been off 10 days for pneumonia during the termination triggering time-frame.
In imposing penalties upon officers who violate policy and procedure, the chief testified it was appropriate to consider how previous violations of the rules by other employees in similar situations were handled along with previous discipline taken against the offending employee. Additionally, the chief acknowledged that the ultimate goal of discipline and penalties is to change the conduct of the employee and rehabilitate the behavior.
The chief was adamant in his testimony to the civil service board that he terminated Atchison in good faith and for cause because of the magnitude of her violations.
LAW
In Lensey v. City of Shreveport Municipal Fire and Police Civil Service Board, 36,934 (La.App.2d Cir.3/5/03), 839 So.2d 1032, writ denied, 2003-0997 (La.6/6/03), 845 So.2d 1091, Judge Moore discussed the proper standard of review for appeals from rulings by a fire and police civil service board. The reviewing court must determine if the decision reached was arbitrary and capricious. Unless a real and substantial relationship between the improper conduct and the efficient operation of the public agency exists, the discipline imposed will be deemed arbitrary and capricious. The police department must demonstrate by a preponderance of |Bthe evidence that the conduct impaired the efficiency and orderly operation of the public agency.
In civil service cases, appellate review is a multifaceted function. First, factual findings are to be given deference. As in all civil cases, the clearly wrong or manifestly erroneous standard must be used by the appellate court. Lensey, supra.
Second, in weighing the civil service board’s determination as to whether the discipline is based upon legal cause and commensurate with the violation, the appellate court must not change the penalty unless it is found to be arbitrary, capricious, and an abuse of discretion. An action is arbitrary and capricious if it is without rational basis. Discipline imposed upon a civil service employee is arbitrary and capricious unless there is a real and substantial connection between the offending conduct and the efficient operation of the public service. Lensey, supra.

Respective Positions of the Parties

Plaintiff, Corporal Kim Atchison, requests reinstatement, back pay, and attorney’s fees, alleging that the board’s ruling was arbitrary and capricious in affirming Chief Schleuter’s decision to terminate her employment, in that:
1. Her actions did not impair the efficient and orderly operation of the MPD;
2. The Chiefs decision to terminate her employment was largely based on actions that did not violate express provisions of departmental policy; and
3. Her punishment (termination) was excessive and disproportionate to sanctions received by other similarly situated MPD officers.
*878 | f,Defendant, Monroe Municipal Fire and Police Civil Service Board, alleges that:
1. Her actions adversely affected the operation of the MPD;
2. Her actions[2] knowingly violated many express policies of the MPD, specifically including a requirement that she “log out/call out” for off-duty jobs taken while on sick leave; and
3. She was untruthful during an internal affairs interview.
DISCUSSION
Based upon the evidence in this record, the trial court correctly ruled that the Monroe Police and Fire Civil Service Board was neither clearly wrong nor manifestly erroneous in finding that Atchison had violated some departmental policies. While she had logged out for off-duty work over 100 times during her employment, she did not do so on others.
In reviewing Atchison’s penalty, we find that the trial court committed a fundamental error that prevented it from making an adjustment to Atchison’s penalty (termination) after it found this penalty to be excessive and disproportionate when compared with punishment imposed upon other MPD officers in somewhat similar situations. The trial court apparently concluded it lacked authority to adjust the penalty and took no corrective action in spite of its negative evaluation of the termination.
Specifically, the trial court noted:
The court agrees with the Plaintiffs contention that her termination is excessive discipline and is without question disproportionate to the sanctions received by similarly situated MPD officers.
17Petective Quentin Holmes, administrative assistant to the chief of police, stated his duties included boosting morale within the department. Holmes felt that fair and even-handed discipline was fundamental to good morale. Based upon Atchison’s situation and the written sick leave policy, Holmes opined that he would not have fired Atchison but would have imposed discipline and warnings to correct the behavior. Because Atchison was not given warnings or previous discipline, Holmes disagreed with her termination while acknowledging that was this was the chiefs responsibility and decision.
In Lensey, swpra, this court reversed Lensey’s termination and imposed a 90-day suspension without pay and benefits. This action was based upon the determination that the City failed to meet the required burden of proof that Lensey’s conduct impaired the efficient operation of the police department.
Because a zero tolerance policy for driving a department vehicle while intoxicated had not been formally publicized, the Fourth Circuit reversed the termination of an NOPD officer who drunkenly drove a department vehicle into a fence. Whitaker v. New Orleans Police Dept., 2003-0512 (La.App. 4th Cir.9/17/03), 863 So.2d 572. This mishap occurred while Whitaker was off-duty. The four-year veteran had a discipline-free record, made restitution for the fence, and attended an alcohol rehabilitation program. Notwithstanding the laudable policy of terminating officers who drink alcohol and drive department vehicles, that policy had not been publicized and Whitaker might not have known about |sthe policy. Therefore, the termination was reversed and the matter was remanded for imposition of a lesser punishment.
*879 Chief Schleuter testified that in early 2008, he decided to terminate any officer who lied during an internal affairs investigation into officer misconduct. The chief acknowledged no written policy was distributed to the officers. Like the officer in Whitaker, swpra, there is no indication that Atchison or any other officer was informed of this policy change. The record showed that other Monroe officers who lied during investigations were disciplined but not terminated.
In Marsellus v. Department of Public Safety and Corrections, 2004-0860 (La.App. 1st Cir.9/23/05), 923 So.2d 656, the termination of a DPS employee was reversed because the court found that the firing was excessive discipline and not commensurate with the relative seriousness of the offense proven. A state employee for 17-18 years without previous discipline, Marsellus was observed sleeping on two occasions while on duty as a prison guard. He denied sleeping on one occasion and stated he might have nodded off on the other. The court observed that the discipline imposed must be based upon legal cause and commensurate with the offending behavior. The decision should not be modified unless it is arbitrary, capricious, or an abuse of discretion. The First Circuit found that DPS did not prove Marsellus was asleep on duty on two occasions, and the agency did not establish his conduct had a “real and substantial” detrimental effect on the efficient operation of the prison. After reviewing the character, content and weight of the evidence, the court found termination was |9excessive discipline, not commensurate with the offense actually proven. Therefore, the firing of Marsellus was found to be an abuse of discretion.
In Fascio v. Department of Police, 2008-1127 (La.App. 4th Cir.4/1/09), 9 So.3d 1029, the court upheld the imposition of discipline but reduced the period of suspension from 30 days to 12 days. In preparing for Hurricane Katrina, the police superintendent required all essential officers to report for duty and remain until relieved. He issued a mandate that only the superintendent himself could grant a furlough. In the aftermath of the hurricane, Officer Fascio was on duty with the K-9 unit and saw his daughter’s damaged home on television.
After informing his supervisor, he traveled to Slidell in his private car with his dog to check on his daughter. While there he obtained from his own home additional weapons and ammunition for his unit and returned to active duty approximately 12 to 13 hours after leaving. He received a disciplinary letter in which he was charged with one count of neglect of duty and given a 30-day suspension. Fascio filed a timely appeal with the Civil Service Commission, which denied his appeal.
Because the commission did not impose the penalty[3] uniformly and because Fascio received the same punishment as an officer who left his/her post for a week, the court found the 30-day suspension arbitrary and excessive. In addition, the mechanical punishment scale did not take into | i0account the officer’s actions, any mitigating circumstances, or how his action may have impaired the public service.
Among the catalogue of complaints against Atchison were allegations that she was observed picking up her children up from school on April 30 and May 1, 2008, *880 when she was on sick leave.[4] Moreover, she was charged with being untruthful about the incidents when asked. However, the record showed she was not on sick leave on those dates. She notified her supervisor that she had been released April 29 to return to light-duty work. She offered to bring in the release and her supervisor informed her she was off the sick log and instructed her to bring the release when she reported for her next scheduled duty.
A reviewing court may not adjust a penalty simply because it disagrees with the punishment imposed. City of Shreveport v. Willis, 33,680 (La.App.2d Cir.8/25/00), 765 So.2d 1245. Atchison’s termination is set aside because we agree with the trial court that termination was “excessive discipline and is without question disproportionate to the sanctions received by similarly situated MPD officers.”
The sick leave policy regarding off-duty employment could be viewed as ambiguous and some of the charges against Atchison proved to be without merit. While the prohibition against lying during investigations could be discerned in the policies of the department, the zero tolerance followed by termination was a change in practice of which Atchison may |nnot have been aware. Moreover, Atchison had been formally commended a number of times during her employment and not been the subject of any previous disciplinary proceedings. No effort was made to warn her against violations or to rehabilitate her behavior prior to termination. Taken together, those factors make the termination clearly wrong and manifestly erroneous. Therefore, the termination is subject to this court’s adjustment to reflect the penalties imposed upon other similarly situated officers who lied during internal affairs investigations and were not terminated.
CONCLUSION
We agree with the Chief of Police and the Monroe Fire and Police Civil Service Board’s decision to impose discipline. To the extent that the judgment affirmed the action of the Monroe Fire and Police Civil Service Board’s finding of violations by Officer Kim Atchison, the judgment is affirmed.
That portion of the judgment affirming Atchison’s termination is set aside. The penalty is amended to the maximum provided by La. R.S. 33:2500(B), 90 days without pay or benefits. We render the judgment awarding Atchison full pay and benefits from the date of her reinstatement plus legal interest until paid. Costs of the appeal in the amount of $121.50 are assessed against the Monroe Fire and Police Civil Service Board.
The judgment is AMENDED AND, AS AMENDED, AFFIRMED AND RENDERED.
APPENDIX
JjSTATE OF LOUISIANA * * PARISH OF OUACHITA * * 4TH JUDICIAL DISTRICT COURT
APPEAL OF KIM ATCHISON VERSUS MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD.
NO. 08-3048.
FILED: _
*881 BY: _
DEPUTY CLERK
RULING REGARDING CIVIL SERVICE APPEAL
This is the second time this proceeding has been before this Court for review. The case was remanded for a new hearing before the Monroe Municipal Fire and Police Civil Service Board to ensure the plaintiff, Kim Atkinson, received due process in the form of an opportunity to present a defense and to be effectively represented by Counsel before the Board in its review of her termination from the Monroe Police Department. Following the second hearing, the Board again affirmed the appointing authority’s decision to terminate the plaintiff and this appeal ensued.
The Plaintiff, a nine-year veteran officer of the Monroe Police Department, was terminated for alleged violations of the sick leave policy, the off-duty log policy, and for allegedly being untruthful during an internal investigation regarding these issues. It is undisputed that, during her nine-year tenure, Officer Atchison had never been the subject of any prior disciplinary action and, in fact, had received numerous letters of commendation. These circumstances notwithstanding, her termination was ordered rather than the imposition of any lesser corrective discipline.[1]
The essence of the Plaintiffs argument is that the body of evidence presented by this Record is legally insufficient to provide an appropriate basis for the Board to uphold the appointing authority’s decision to terminate her. As a corollary, the Plaintiff points out the disparate treatment of Officer Atchison when compared to other officers found guilty of the same type of violations.
The parties are in agreement concerning the appropriate standard of review to be exercised by this Court in this case. This Court is limited to a determination of whether the decision made by the Board was made in good faith and for cause under the ^provisions of the Civil Service Law. Under our jurisprudence, this matter is not a trial de novo and this Court’s review is confined to the Record and evidence presented to the Board in reviewing whether or not that body of evidence provides a sufficient basis for the Board’s decision. Only if the Record reveals a lack of sufficient evidence to support the decision of the Board, or an abuse of the Board’s discretion, can the decision of the Board be overturned by this Court. In other words, this Court reviews the Board’s decision to determine whether, on the basis of the evidence presented by the Record, the Board’s actions and decisions can be deemed arbitrary and capricious. Furthermore, this reviewing Court cannot substitute its judgment for that of the Board or overrule the Board’s decision merely because it disagrees with the penalty imposed.[2]
In this case, the body of evidence presented for the Board’s review, as reflected by the Record presented to this Court, contains conflicting testimony regarding the allegations of misconduct. However, these conflicts in testimony do not neces *882 sarily render that body of evidence legally insufficient under the standard of review of the Board’s decision this Court is obliged to apply. See Linton v. Bossier City Mun. Fire and Police Civil Service Bd., 428 So.2d 515 (La.App. 2nd Cir.1983).
Based upon a review of the body of evidence presented for the Board’s consideration, this Court cannot conclude that the Board acted in an arbitrary and capricious manner in violation of the statute. Although containing conflicting testimony, that same body of evidence provides a sufficient basis to preclude this Court from finding that the Board failed to act in good faith and for cause under the provisions of the applicable statutes. In short, this Court cannot say that the Board acted irrationally or in an arbitrary and capricious manner in reaching its decision.
The body of evidence presented to the Board for its review is such that this Court cannot conclude that the Board acted irrationally or without a sufficient evidentiary basis in finding that the plaintiff violated provisions of Monroe Police Department policy and was subject to being disciplined for those violations. This Court, under the required standard of review, cannot conclude those factual findings are clearly wrong or manifestly erroneous. Likewise, this Court cannot conclude based upon the evidence [¡¡presented for the Board’s review that those factual findings were made in anything other than good faith and for cause under the provisions of the Civil Service Law.
Since, when judged by the appropriate standard of review, the Plaintiff was properly subject to being disciplined for her actions, the remaining argument to be addressed is whether or not the penalty imposed in this instance is too severe. In support of this contention, the Plaintiff directs this Court’s attention to other officers found guilty of the same or violations of a similar nature who received far lesser disciplines than termination. Citing instances in which other officers received brief suspensions or transfers to other assignments, the Plaintiff makes a compelling case that her punishment is disproportionately severe.
As noted earlier, this reviewing Court, however, cannot overrule the decision of the Board merely because it disagrees with the penalty imposed in a particular case. Furthermore, the jurisprudence cited by the parties recognizes that no requirement exists for identical or even substantially similar treatment of offending officers for the same or similar violations.
As correctly pointed out in brief, when the challenged action of the appointing authority is disciplinary in nature, the authority must show to the Board that the disciplined employee’s conduct violated the standard set forth in LSA-R.S. 33:2500, that the disciplined employee’s conduct impaired the efficient and orderly operation of public service, and that the appointing authority had a rational basis for disciplining the employee and, therefore, did not act arbitrarily or capriciously.[3]
Having found, based upon the required standard of review this Court is obliged to apply, that it cannot be said the plaintiff was improperly subjected to discipline, the punishment imposed as a consequence of *883 that finding is not properly within this Court’s ambit of authority.[4]
|4For these reasons, the action of the Board in upholding the decision or action of the appointing authority is affirmed, with all costs apportioned equally among the parties.
The Court will sign an appropriate judgment in accord with these reasons which has been approved as to form by Counsel within 20 days immediately following the filing and service of these reasons upon all Counsel of Record.
DONE and SIGNED in Monroe, Louisiana, this 19 day of May, 2010.
JUDGE WILSON RAMBO
FOURTH JUDICIAL DISTRICT COURT
SECTION “2”

PLEASE MAIL COPIES TO:

Michael L. DuBos
Attorney at Law
Post Office Box 14106
Monroe, Louisiana 71207-4106
Elmer Noah
Attorney at Law
1900 North Eighteenth Street, Suite 302
Monroe, Louisiana 71201
Nanci S. Summersgill
Monroe City Attorney
Post Office Box 123
Monroe, Louisiana 71210-0123

. Department policy and procedure required officers working off-duty jobs to notify the department of their location for safety considerations.

. Chief Schleuter testified that in his 30 years with the MPD, he had never known any officer to have violated as many policies as many times as the plaintiff did.

. Any absence up to 7 days was a 30-day suspension; a 7- to 14-day absence was a longer suspension for each additional day of absence; and absences of over 14 days resulted in termination.

. MPD sick policy requires an officer on sick leave to remain at home except to visit a doctor, clinic or hospital for treatment, to buy medicine, to buy food, to attend church, to vote, to attend a friend or relative funeral, and to engage in any limited activity specifically prescribed by the attending physician, Curiously, taking or retrieving one’s children from school is not included in the list of permissible exceptions to the policy.

. The briefs submitted by the parties in this proceeding thoroughly summarize the evidence presented for the Board’s consideration. Such is the case particularly with respect to the brief filed on behalf of the Plaintiff. Consequently, the Court will not belabor unduly the details set forth in those pleadings in the context of these reasons for judgment.

. The briefs are replete with appropriate citations regarding this standard of review and are omitted from these reasons.

. Again the citations are omitted but are replete in the briefs provided the Court. The brief on behalf of the City of Monroe succinctly summarizes the policy considerations which allow for a finding, based on the evidence presented to the Board, that the Plaintiffs action may reasonably be characterized as an impairment of the efficient and orderly operation of public service and require no detailed discussion herein.

. The Court agrees with the Plaintiffs contention that her termination is excessive discipline and is without question disproportionate to the sanctions received by other similarly situated MPD officers. However, no authority has been presented which would allow this Court to modify the discipline imposed to a lesser one corrective in nature thereby vacating the Plaintiff's termination from employment in a case in which the Board’s actions have otherwise survived review.