BROWN, Chief Judge.
hln this civil service action, both plaintiff, Timothy Morris, and defendant, the City of Minden, have appealed from the district court’s reversal of Lt. Morris’s termination and remand to the Minden Fire and Police Civil Service Board (“the Board”) for an independent assessment of sanctions that are more commensurate with the actions by Lt. Morris that precipitated this disciplinary action.

Fdcts and Procedural History

, Plaintiff, Timothy Morris, had been employed by the Minden Police Department as a police officer for more than 18 years when he was terminated in May of 2013 for his handling of a telephone call from a concerned mother who was unable to locate her children.. On April 8, 2013, the part-time dispatcher at the Minden Police Department, who had been employed there for approximately four months, received a call from a distressed mother who reported that her children were missing. The dispatcher did not know how to respond, so he routed the call to Lt. Morris, the shift supervisor. In addition to Lt. Morris, there were three other officers on duty, although they were out on calls at the time this particular call came into the station, so there was no one available to dispatch to the scene at the time of the mother’s call. The mother explained to Lt. Morris that her children were last seen walking in the direction of their grandparents’ home away from an, alternative school (which is where their school buses drop them off every day) after, the mother was more than an hour late to. pick up the children. Lt. Morris took down the mother’s name and the names of the children, got descriptions of the children’s clothing, li>and asked the mother questions about her efforts to locate the children, such' as whether she had gone to the grandparents’ house or any other location between the school and the grandparents’ residence to look for the children. He also asked the mother whether the children had previous *490 ly walked away from the bus stop at the alternative school before, and her answer was that they had walked to their grandparents. Lt. Morris did not believe that the children had been abducted and advised the mother they were likely somewhere near their grandparents’ home.
Approximately five minutes after first speaking with the mother, Lt. Morris contacted her to find out about the children. The mother, whom Lt. Morris had advised to go back to her house to make sure the children were not there, had not yet reached her home. He requested that the mother call him back when she got to her house. Lt. Morris did not heár from the mother, so he called her several more times until he finally reached her. The mother told Lt. Morris that she had contacted the Webster Parish Sheriffs Office and that they were “on the scene.” She further related that she had a teenager at home who confirmed the younger children were not there. By this time, about 26 minutes had elapsed from Lt. Morris’s receipt of the initial call. Lt. Morris' felt secure that the mother was receiving proper assistance from the sheriffs office; however, upon shift change he told his relieving officer, Lt. Seth Young, about the situation. At that point, Lt. Young left to assist the sheriffs department in the search. Lt.' Morris, who was no longer on duty, drove his personal vehicle to the area to help in the search for the children. An hour and 23 minutes after the initial call from |sthe children’s mother to the MPD, the children were found playing in the back yard:of a home near the grándpar-ents’house. ■
On April 18, 2013, Chief Steve Cropper met with Lt. Morris to discuss his handling of the mother’s phone call, which the chief asserted was a violation of Minden Police Code of Conduct Section 6, paragraphs A, D and I, a Class II offense as provided for in the City , of Minden Employee Manual, and a violation of several subsections of La. R.S. 33:2500. As the district court observed in its written opinion, however, there were no written policies setting forth procedure or protocol regarding the handling of missing children calls or reports. At the chiefs request, Lt. Morris completed an “Employee Warning Report,” wherein the specific violations were detailed, and there was a notation that the matter had been referred to the Personnel Committee and Appointing Authority, the City of Minden, The next day, without further investigating the matter with Lt. Morris, Chief Cropper “upgraded” the violations to Class III offenses different in nature from those detailed in the Employee Warning Report Lt. Morris had completed the previous day.[1] On May 6, 2013, Chief Cropper terminated Lt. Morris.
On May 7, 2013, plaintiffs attorney requested a hearing to appeal Lt. Morris’s termination. On June 7, 2013, plaintiffs counsel amended his appeal to state that “[Lt.] Morris was appealing his termination as he was fired without cause and he desired reinstatement.” On June 10, 2013, the | ¿Board instructed plaintiff to combine the first two letters into one “amended appeal letter” and to “specify in a complete and concise statement, the reasoning for each witness” listed to testify on his behalf at the hearing. On June 14, 2013, plaintiffs counsel submitted this third appeal request; however, because this letter contained “typographical errors,” the Board required that Lt. Morris file a fourth amended appeal letter, which the Board later determined did not eon- *491 cisely state plaintiffs reasons for appeal. The Board at that time unilaterally placed the matter and previously scheduled hearing on hold until plaintiff complied with, the Board’s instructions regarding the appeal. process. On June 28, 2013, plaintiffs counsel filed a fifth appeal letter with specific details regarding Lt. .Morris’s objections to his termination. Thereafter, the Board agreed to hear plaintiffs appeal.[2]
The appeal and public hearing before the Board was held on August 22-23, 2013. The Board unanimously, affirmed the MPD’s decision to terminate Lt. Morris, and plaintiff appealed the Board’s ruling to the district court on'September 20, 2013, by fax filing to the Webster Parish Clerk of Court’s Office and the Board a “Petition for Appeal and Declaratory Judgment,” together with an unsigned order regarding the preparation of a certified récord by the Board. Thereafter, on September 24, 2014, plaintiff filed the original documents with the Clerk’s Office and on September 25, 2013, the Board was served with the petition and order. In his appeal to the |fidistrict court, Lt. Morris contended that he was terminated without an investigation by the MPD, and the appeals process was “biased.” Plaintiff also asserted that his punishment, termination, was greatly disproportionate to his alleged violations in connection with the missing children call.
On'October 13, 2013, the City filed an “Answering Statement to the Appeal,” and on December 17, 2013, the Board filed the transcript in the district court. On April 17, 2014, plaintiff filed a “Memorandum Brief in Support of Appeal,” together with a proposed Order setting a hearing. The trial court, however, ordered that the matter be submitted on briefs. On May 15, 2014, the City’s attorney filed an ex parte “Motion for Extension of Time” to investigate the factual allegations in plaintiffs brief. This extension was granted by the trial court, which also specified that defendant’s brief had to be filed by July 3, 2014. On that date, the City’s attorney filed.a second ex parte “Motion for Another Extension of Time” on behalf, of defendant, and was given an additional 30 days in which to file its brief. Plaintiff opposed the second continuance to no avail. Thereafter, on July 21, 2014, the City filed a “Motion to Dismiss and Exception of Per-emption” in which defendant alleged that plaintiffs appeal was untimely since the Board did not get notice of his appeal until it was served upon them by the Sheriffs Office on September 25,2013.
A “Motion for Sanctions” was filed against the City and its attorney by plaintiff on July 23, 2014, noting that the City’s allegations regarding untimely service of the notice of appeal were false, as plaintiff had faxed to the Board on the same day that the notice of appeal was faxed to the | (¡Clerk's Office. The City and its counsel filed a “Response to the Sanctions Motion” in which it admitted that the allegations regarding lack of service on the Board were false and that a review of the record would have revealed this. On August 26, 2014, the trial court sanctioned the City’s attorney (not the City or the Board) and ordered him to pay $1,500 in attorney fees for filing an unfounded exception of per-emption in an attempt to delay filing a brief and denied any additional filings on *492 behalf of the Board.[3]
At a hearing on the form of the judgment, the trial court withdrew the sanctions, stating that “the transcript is clear, I made the award of attorney’s fees against the [Board] and Mr. Minifield” and because the Board had no notice of the hearing, adverse action against it was inappropriate. In its Opinion on the merits, the trial court found that:
After a comprehensive review of the record, the Court determines the Board conducted a timely and thorough hearing, wherein multiple witnesses testified and were subject to cross examination .... [T]he Court finds the Board conducted Morris’s appeal properly within the provisions of La. R.S. 33:2501; the Board’s decision to uphold the disciplinary action against Morris was not made in manifest error and the Court affirms the findings of the Board to the extent that some disciplinary action against Morris is warranted.
The Court, however, also finds that the Board’s decision was arbitrary because the record does not reflect that the Board determined Morris’s termination from the MPD was made in good faith for cause or addressed the issue of ex-cessiveness regarding Morris’s disciplinary action. The Board was required to perform an independent review regarding the severity of the punishment, which inherently includes an evaluation of the manner in which the MPD conducted its investigation. In Morris’s case, the record reflects the Board did not conduct such a review. Moreover, no one from the MPD testified to a specific policy or policies in place regarding the 17procedure by which an officer should address or handle calls similar to the one that ultimately led to Morris’s termination from the MPD. In fact, the record reflects that no such policy or policies exist. Therefore, the Court finds the Board’s decision to affirm the MPD’s termination of Morris— after more than seventeen (17) years of service with the MPD — for a violation void of policy or procedure and without an independent analysis of MPD’s internal investigation, fails to be commensurate with the severity of the violation.
In its judgment dated May 11, 2015, the trial court denied the City’s exception of peremption; vacated the August 26, 2014, judgment imposing sanctions against the City’s attorney; upheld the Board’s finding that some disciplinary action is warranted; reversed the termination of Lt. Morris’s employment; and, remanded the matter to the Board for an independent assessment of sanctions, specifically a determination of new and appropriate sanctions that more adequately address plaintiffs actions or lack thereof.
The City has appealed the denial of its exception of peremption and the reversal of the punishment imposed upon Lt. Morris by the appointing authority and upheld by the Board. Plaintiff has appealed the reversal of the judgment imposing sanctions for the filing of the peremptory exception (and has asked for additional attorney fees on appeal because defendant has re-urged this issue in its appellate brief) and the confirmation of the Board’s finding that some disciplinary action is warranted; and, rather than remanding this matter to the Board for an assessment of an appropriate penalty, plaintiff contends that the trial court itself should have amended the *493 discipline imposed. Should this Court find that disciplinary action is warranted, plaintiff urges this Court to impose the maximum allowed under Civil Service law, which is 90 days’ suspension without pay.

\ pJDiscussion

Procedural Issue: Validity of Notice of Appeal

The City urges that the trial court erred in denying its exception of peremption because Lt. Morris’s counsel improperly filed its notice of appeal with the district court rather than with the Board as provided for in La. R.S. 33:2501(2) and therefore his appeal was untimely. Lt. Morris contends that the City’s entire argument on this issue is frivolous and asks this Court to reinstate the sanctions initially imposed on the City’s attorney by the trial court and to award an additional attorney’s fee for work done by his attorney addressing this issue on appeal.
The City is correct in its assertion that La. R.S. 33:2501(2) requires that the Board be served a written notice of the appeal to the district court within 30 days after entry of the Board’s decision. As noted by the court in Thibodeaux v. City of Opelousas, 97-1574 (La.App. 3d Cir.07/22/98), 717 So.2d 254, 258, writ denied, 98-2768 (La.12/18/98), 731 So.2d 277, the notice of appeal is to be sent to the civil service board, not the trial court, within 30 days. At 'that time, the civil service board then has ten days to prepare the record and forward it to the court for review;- It is then, upon receipt of the record by the trial court, that the trial "court assumes jurisdiction.
In this case, however, plaintiff timely provided both the Board and the trial court with written notice of his appeal. The Board’s decision was rendered on August 23, 2013. On September 20, 2013, plaintiffs counsel faxed both the district court and the Board the petition for appeal and an ^unsigned order for the preparation of a certified record by the Board. Thereafter, on September 24, 2013, the original documents were filed with the Clerk’s Office and on September 25, 2013, the Board was served with the petition and order. The trial court correctly found that plaintiffs notice of appeal to the Board Was timely.
We deny plaintiffs request seeking reimposition of the sanctions initially imposed by the trial court and an award of attorney’s fees on appeal. The trial court has discretion to sanction under La. C.C.P. art. 863. Woods v. Woods, 43,182 (La.App.2d Cir.06/11/08), 987 So.2d 339, writ denied, 08-2256 (La.11/21/08), 996 So.2d 1110; McKoin v. Harper, 37,984 (La.App.2d Cir.12/10/03), 862 So.2d 410. La. C.C.P. art. 863 is intended only for exceptional circumstances and is not to be used simply because the parties disagree as to the correct resolution of a legal matter. Woods, supra; Caldwell v. Griggs, 40,838 (La.App.2d Cir.03/08/06), 924 So.2d 464; Green v. Wal-Mart Store No. 1163, 96-1124 (La.App. 1st Cir.10/17/96), 684 So.2d 966. The slightest justification for the exercise of a legal right precludes sanctions. Alpine Meadows, L.C. v. Winkler, 49,490 (La.App.2d Cir.12/10/14), 154 So.3d 747, writ denied, 15-0292 (La.04/24/15), 169 So.3d 357; Woods, supra. There is no clear error in the trial courfis ruling on this issue.

Substantive Issue: Trial Court’s Ruling

Article X, Section 8(A) of the Louisiana Constitution, which governs disciplinary action as to classified civil servants, provides that no person who has gained permanent status in the classified state or city service shall | inbe subjected to disciplinary action except for cause ex *494 pressed in writing. In this context, “cause” is that which, includes conduct prejudicial to the public service involved or detrimental to. its efficient operation. Bannister v. Dept. of Streets, 95-404 (La.01/16/96), 666 So.2d 641. The commission or board has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters v. Dept. of Police of New Orleans, 454 So.2d 106 (La.1984); City of Bossier City v. Vernon, 12-0078 (La.10/16/12), 100 So.3d 301. In other words, the civil service commission or board reviewing the disciplinary action of the' appointing authority not only ensures that the discipline was imposed in good faith for cause, but independently ensures that-the particular punishment imposed was proper. Id.; Moore v. City of Baton Rouge, 13-1026 (La.App. 1st Cir.05/02/14), 146 So.3d 584.
Factual findings in civil service cases are to be given deference by a reviewing court. Atchison v. Monroe Mun. Fire and Police Civil Service Board, 46,178 (La.App.2d Cir.05/04/11), 64 So.3d 874; Lensey v. City of Shreveport Municipal Fire and Police Civil Service Board, 36,934 (La.App.2d Cir.03/05/03), 839 So.2d 1032, writ denied, 03-0997 (La.06/06/03), 845 So.2d 1081. As in all civil cases, the clearly wrong or manifestly erroneous standard is to be used by the appellate court. Id.
After two days of testimony from witnesses from both parties and closing arguments, during which Lt. Morris’s attorney conceded that his client had “dropped the ball” on the incident in question and asked for a In sanction other than termination, the board members convened into an executive session, during which they voted unanimously to uphold the City of Min-den’s decision to terminate Lt. Morris, The following is the extent of the Board’s factual findings:
(1) [Violations of] Civil Service Law Title 33:2500. Corrective and disciplinary actions for maintaining standards of service.
(A)(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
(A)(2) The deliberate omission of any act that it was his duty to perform.
(A)(3) The commission or omission of any act to the prejudice of the departmental,service or contrary to the public interest or policy.[4],
(2) On April 8, 2013, [Lt. Morris] received a phone call at 4:57 p.m., from a mother reporting that her two children, ages 8 and 11, were missing. She stated that when she.arrived at the Alternative School located on Clerk St. in Minden, La., to pick up the children, they were not there. She was told by a faculty member at the school that the children left with someone, but didn’t know who it was. The Mother contacted her Mother-in-Law and the . children were not with her. The mother then asked to see a video of the children when they arrived at the school. The video showed that the children arrived at the school and it displayed them walking off from the school at approximately 4:05 p.m., in a different direction from their residence, and the mother indicated that they have been looking for the children since 4:05 p.m. Lt. Timothy Morris stated in his testimony to *495 the Civil Service Board, that prior to the missing children call coming in,his patrol officers were busy and he notified the Webster Parish Sheriffs Department to help them with a Panhandler call. When the missing children call came in he testified that his officers were still busy and he, Lt. Timothy Morris, failed to respond to the missing children’s call, by either sending a Minden Police Officer or contacting the Webster Parish Sheriffs Department. After approximately 35 minutes with no response from the Minden Police Department, the Sheriffs Department was called around 5:30-5:35 p.m., by the Grandfather of the missing' children. The Sheriffs Office responded in approximately 4-6 minutes of |12them getting called and informed of the incident. The first Minden Police Officer to arrive on scene was Lt. Seth Young who is the night shift Supervisor, and his shift starts at 6:00 p.m. Lt. Young arrived on scene sometime between 6:00-6:10 p.m. and shortly after that the children were’ found safe by a Deputy from the Webster Parish Sheriffs Department.
Decision of the BoardsThe evidence and testimony presented to the civil service board established that the alleged violations did occur. The board determines that the appointing authority acted in good faith and/or for just cause in the disciplinary action taken against Officer Timothy Morris and thereby upholds the action of the appointing authority.
The trial court’s written reasons for judgment show that the judge conducted his review pursuant to the good faith/ cause inquiry, -with due deference to the findings of the Board that some disciplinary action against Lt. Morris was warranted. However, the trial court observed that the factual fíndings of the Board were strictly limited to the events involved in the incident for which Lt. Morris was terminated. Because there was no discussion or analysis whatsoever by the Board of the internal investigation into Lt. Morris’s actions, the other disciplinary options to termination or the specific factors considered by the city in determining that termination was the appropriate punishment for Lt. Morris’s infraction, the trial court concluded that the Board, once it determined that there was good or lawful cause to impose discipline, erred when it failed to also determine whether the discipline imposed was appropriate.. See, Vernon, supra; Evans v. DeRidder Municipal Fire, 01-2466 (La.04/03/02), 815 So.2d 61, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003). In reviewing the board’s determination that the disciplinary action was based on legal cause and commensurate with the infraction, this court should not | ^disturb the board’s decision unless it is arbitrary, capricious or characterized by an abuse of discretion. Evans, supra; Lensey, supra.
Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. Bannister, supra. The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operation of the public service. Atchison, supra; Lensey, supra.
The trial court did not err in finding that the Board’s failure to even determine whether there was sufficient cause for terminating Lt. Morris was arbitrary and capricious. Having read the transcript of the hearing conducted before *496 the Board, we find, as did the trial court, that there were there no policies or procedures, written or otherwise, in place applicable to the handling of calls about missing children. As the board members pointed out, a policeman with 17 years’ experience such as Lt. Morris can be expected to rely on his training and experience in such a situation.' Written procedure and policies, however, negate the necessity for an officer to have to make discretionary decisions and responses in what all law enforcement personnel involved unequivocally deemed a priority situation. Termination is not commensurate with Lt. Morris’s infraction, which was not the violation of any written procedures or protocol inasmuch as there were none, but instead consisted of the failure of Lt. Morris either to dispatch an officer once he got off the initial call with the concerned mother or to go 114search for the children himself and leave the officers writing reports behind to supervise the new part-time dispatcher.[5]
The appointing authority failed to show a real and substantial relationship between Lt. Morris’s conduct and the efficient operation of the Minden Police Department. Arguably, what impaired the efficient and orderly operation of the Minden Police Department was the lack of -written policy for all of its officers; in this case, the lack of written procedure and protocol directly affected the dispatcher and Lt. Moms, to whom the dispatcher transferred the mother’s call because he did not know how to respond. Luckily, the outcome in this case was good. Dissatisfied with Lt. Morris’s initial response or lack thereof, rather than further telephone communication with Lt. Morris, the mother and her in-laws sought assistance from the Webster Parish Sheriffs Office, and the children were found playing in a yard close to the in-laws’ home about an hour after deputies began searching for them.
We also note that initially, Lt. Morris was charged with a Level II offense (# 16. Any actions which are detrimental to the positive image of the City of Minden, City government officials, or other City employees as determined and documented by the Supervisor) by Chief Cropper. Such an offense was punishable by a suspension without pay, the number of days to be determined by the mayor, and a written reprimand. Chief Cropper testified that he charged Lt. Morris with this offense thinking that Lt. Morris, having had a speeding offense within the same year, could be | ^terminated, and that was the chiefs intention. However, upon learning that termination was not a disciplinary action available under Level II (since the speeding infraction didn’t count as a predicate offense such that Lt. Morris would have had two Level II infractions within a 12 month period), the chief upgraded the charge to Level III (# 16. Any actions which are detrimental to the positive image of the City of Minden, City government officials, or other City employees as determined and documented by the Supervisor). In his testimony before the Board, Chief Cropper stated, “I felt like [Lt. Morris] did not do his job, and I didn’t want him associated with the P.D., so I upgraded it to a class III so he could be terminated, because that’s what I wanted to recommend was termination.”
The fact that Lt. Morris’s infraction was not the violation of a written protocol or procedure or a deliberate disregard of departmental policies, together with a decision by the appointing authority to terminate Lt. Morris (based upon the chiefs recommendation) without any con *497 sideration of a lesser penalty more proportionate to .the infraction of this veteran police officer, leads us to conclude that the there was no rational basis whatsoever for the punishment imposed in this case. See, Parker v. Plaquemines Parish. Govt., 12-0332 (La.App. 4th Cir.09/26/12), 101 So.3d 113; Pope v. New Orleans Police Dept., 04-1888 (La.App. 4th Cir.04/20/05), 903 So.2d 1. Therefore, rather than remand this matter to the Board for the fashioning of a punishment, we find that appropriate, proportionate penalty for Lt. Morris’s infraction is the maximum allowed by law, 90 days’ suspension 11fiwithout pay or benefits. La. R.S. 33:2500(B). See, Atchison, supra; Lensey, supra.

Conclusion

For the reasons' set forth above, we affirm that part of the trial court’s judgment upholding the Board’s determination that. some disciplinary action against Lt. Morris is warranted. We also affirm that part of the trial court’s judgment reversing the termination. We reverse that part of the trial court’s judgment ordering remand and amend the judgment to impose the statutory maximum period, of suspension for 90 days without pay or benefits as provided in La. R.S. 33:2500(B). We render judgment awarding full pay and benefits from the date of his reinstatement, together with legal interest thereon until paid. AFFIRMED IN PART, REVERSED IN PART, AMENDED and RENDERED.
ON APPLICATION FOR REHEARING
Before BROWN, CARAWAY, MOORE, LOLLEY and PITMAN, JJ.
Rehearing denied.

. In his testimony before the Board, Chief Cropper stated that the reason for the upgrade was that he wanted to' terminate Lt, Morris, and termination was not disciplinary action that could be imposed for a Class II violation.

. In one of his assignments of error, plaintiff has urged that the Board did not conduct a fair hearing, including an allegation that the Board engaged in unfair and improper delay tactics. We find no error in the trial court's conclusion that plaintiff was afforded a fair hearing, but cannot condone the obvious dilatory and prejudicial behavior engaged in by the Board in its refusal to accept plaintiffs appeal on its second, third or fourth submission.

. Apparently everyone present believed that it had been the City who was prohibited from future filings since the motion for sanctions had been filed against the City and the City’s counsel. The Board, however, was not prejudiced by this order inasmuch as its own deadline in which to file a brief had already expired.

. The Board did not find any violations by Lt. Morris of'either the City of Minden Employee Manual (Class III offense, p. 29, line 16) or the Minden Police Departmental Code of Conduct/Policy and Procedures (Sec. 6, paragraphs A, D and I).

. Lt. Morris testified that he was under a direct order from Chief Cropper not to leave early, but to remain in the office with the dispatcher who was still learning.