Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,801-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SKYLO JOHNSON                                        Plaintiff-Appellee

versus

CITY OF SHREVEPORT AND                              Defendants
ITS APPOINTING AUTHORITY
AND THE SHREVEPORT
MUNICIPAL FIRE AND POLICE
CIVIL SERVICE BOARD

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 599,488-A

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| PETTIETTE, ARMAND, DUNKELMAN, WOODLEY, BYRD & CROMWELL, L.L.P. By: Joseph S. Woodley     Marshall L. Perkins | Counsel for Defendants-Appellants, City of Shreveport and Its Appointing Authority |
| RONALD MICIOTTO | Counsel for Plaintiff-Appellee, Skylo Johnson |
| BILLY R. CASEY | Counsel for the Shreveport Municipal Fire and Police Civil Service Board |

* * * * *

Before PITMAN, COX, and STONE, JJ.

**PITMAN, J.**

The City of Shreveport and its Appointing Authority (collectively, "the City") appeal the ruling of the trial court which reviewed the Shreveport Municipal Fire and Police Civil Service Board's ("the Board") termination of Plaintiff Skylo Johnson from his position as a firefighter with the Shreveport Fire Department ("the SFD"). The trial court overturned the Board's decision and ordered Plaintiff's reinstatement, amending the penalty previously imposed from termination to ninety (90) days without pay and benefits. The City appeals the decision of the trial court. For the following reasons, we reverse.

## FACTS

Plaintiff joined the SFD in October 2008. In January 2015, he committed an act of violence against Shirley Hall in front of a fire station. This act was witnessed by fellow firefighters. After the incident with Hall, he received a letter of reprimand from the SFD and was required to undergo anger management counseling. He claimed that he completed this counseling after a very short time.

Despite completion of this counseling, Plaintiff attacked Tamika Lattin, his former girlfriend and mother of his children, at their home on November 1, 2015, causing her to have a black eye. She did not go to the police that day; however, when he attacked her again on November 3, 2015, and choked her, fearing for her life, she went to the Shreveport Police to report the incidents. The police observed that her left eye was completely swollen shut, and the surrounding area was black and blue. The police obtained a warrant for Plaintiff's arrest, and he was charged with domestic

abuse battery and strangulation. Plaintiff never stood trial. Lattin recanted her statements and stated that her injuries were "accidental" and that the incident was "a disagreement and a minor altercation." She also stated that if Plaintiff lost his job and went to jail, it would cause a hardship on her family. The Caddo Parish district attorney allowed Plaintiff to enter into a pretrial diversion agreement whereby he would go to anger management and domestic abuse counseling. After he attended, the charges against him were dismissed.

On December 3, 2015, the SFD Administration sent Plaintiff a letter of termination, which stated that on November 5, 2015, he had been informed of the commencement of an investigation surrounding possible violations of SFD Rules and Regulations; SFD Core Values; local and state civil service laws; and/or local, state and federal laws. The letter states:

> On December 2, 2015, you admitted to going through Tamika's phone without her permission and becoming angry at what you saw. Further, you admitted striking her in the face and causing deformity to her face. Your actions in this incident and your previous incidents concerning domestic abuse both during employment and prior to employment do not reflect the core values of the Shreveport Fire Department. Those actions and behavior exhibited are not the expectations that the citizens of Shreveport expect from their public servants.

The letter specified that the violations included SFD Rules and Regulations Article 1. Authority, Scope and Application, No. 3; Article XVI, General Rules, No. 2-Professional Knowledge and Skills; and La. R.S. 33:2500; the last of which provides that the appointing authority may remove any employee from the service for the commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy; or conduct of a discourteous or wantonly offensive nature toward the public; or any dishonest, disgraceful or immoral conduct.

2

Shreveport Police Department records, obtained in conjunction with the SFD Internal Affairs investigation in the matter, show that in 2006, Plaintiff was also charged with domestic abuse battery of Lattin. In July 2009, after he joined the SFD, he was charged with battery again after he and Lattin exchanged punches, indicating that Plaintiff had a history of domestic abuse even though he had avoided convictions for these offenses. Plaintiff's official "rap sheet," however, shows only two arrests, both of which occurred in 2015.

After a predisciplinary conference, Chief Scott Wolverton of the SFD terminated Plaintiff's employment effective December 15, 2015.

Plaintiff appealed his termination to the Board and argued that the SFD did not have good cause to terminate him. The Board held a hearing on March 8, 2017. Multiple witnesses testified, including Det. Shaunda Holmes, Chief Wolverton and Daniel Turner, a firefighter who witnessed the Hall altercation in front of Fire Station 7. For the defense, Plaintiff called Hall, his parents, his current girlfriend and two former coworkers to testify on his behalf. Lattin did not testify.

Det. Holmes, who is employed by the Shreveport Police Department in the domestic violence unit, testified that on November 3, 2015, she went to 4225 Lakeshore Drive in Shreveport to investigate a reported domestic battery. When she arrived, she met Lattin and learned that Plaintiff was involved in the incident. She testified that she was already familiar with Plaintiff and Lattin since they "have a history of domestic abuse battery . . . and property damage."

Det. Holmes further testified that Lattin told her that Plaintiff had attacked her on two separate days. On November 1, 2015, he pulled her off

3

the couch and began hitting her about the body because he was upset about something he had seen on her cell phone. She did not call the police that day. On November 3, 2015, he grabbed her by the throat, choked her and battered her about the body. He also threw her clothes out of the house. She tried to leave, but he grabbed her by the hair to stop her; however, she was able to leave and went to the police to file a report. Photographs were taken of Lattin at the police station, which showed her with a very prominent black eye.

Joshua McCollum, an internal affairs investigator for the SFD, testified that he investigated Plaintiff regarding the incident at issue in this case. He stated that although he tried to get Lattin to take part in the investigation, she never gave him a statement. He received and reviewed the Shreveport Police Department's narrative and supplements and also spoke to Det. Holmes. He testified that Plaintiff's version of the November 1, 2015 incident was that he found evidence on Lattin's phone that she was having a relationship with another man, and he began to move out. Lattin attacked him from behind, and "he blindly swung his arm around" and hit her, striking her in the face. Plaintiff also told him that he had to hold her down to stop her attacks. On November 3, 2015, Plaintiff claims Lattin began throwing his clothes to the floor, and he lost his temper and threw her clothes outside the apartment. Lattin left the apartment, and he went to a friend's house to stay. Plaintiff further told him that it was not until the next day that he heard the police were looking for him and that he believed the attacks and filing of the police report were due to her anger at him for leaving her. McCollum testified that the incident resulted in violations of the SFD rules and regulations.

McCollum was questioned about specific violations of rules and regulations and testified that Plaintiff's actions violated Article 1 in that his conduct brought discredit upon the department and its members and was disrespectful and not law-abiding. He stated that Plaintiff's conduct was prohibited by the civil service statutes, particularly La. R.S. 33:2500, in that it was prejudicial to the SFD and contrary to public interest or policy. It was also of a wantonly offensive nature to the public and was dishonest, disgraceful or immoral conduct and a violation of state law.

Chief Wolverton testified that he initiates investigations of firefighters and holds predisciplinary conferences for employees who have possibly violated the rules and regulations of the SFD. He stated that he was the final authority in determining the level of discipline imposed. He further stated that he conducted a predetermination conference in regard to Plaintiff's matter with evidence from the internal affairs investigation and police report, including pictures and information regarding Plaintiff's prior domestic abuse history. He testified that Plaintiff did not accept any responsibility for his actions. He noted that Plaintiff had violated rules and regulations of the SFD and that he had attended anger management training, both as part of the diversion program related to the incident for which he was terminated and as a result of a disciplinary action by the SFD because of an incident which occurred in February 2015. That incident, which was witnessed by other firefighters, took place in front of Fire Station 7 and involved a female other than Lattin. Plaintiff was subsequently arrested for disturbing the peace. He also noted that Plaintiff worked with female firefighters.

Chief Wolverton further testified that Plaintiff's violations resulted in his termination and included committing an act resulting in his arrest, not

5

being a law-abiding citizen and bringing discredit to the SFD based on those actions. He stated that he found that Plaintiff had violated Article 16 of the general rules, i.e. that he was not conducting himself in the manner of a prudent, law-abiding and self-respecting citizen and that he had brought discredit on the SFD or its members.

Chief Wolverton was asked about a Shreveport *Times* reporter who had questioned him regarding Plaintiff's actions and earlier arrests. He responded that he was amazed and wondered how Plaintiff was employed with the SFD considering the extent of his record. He testified that he made the decision to terminate Plaintiff based on his pattern of behavior of abusing women and that the behavior did not reflect what he believed, as Fire Chief, the citizens expected from a public servant.

On cross-examination, Chief Wolverton was asked if he was aware that Plaintiff had been found not guilty of the charge of disturbing the peace for the February 2015 incident. He replied, "Regardless of the outcome of the criminal investigation . . . the acts still violates (sic) our policies and standards of behavior as it relates to civil service employees." He later reiterated in his testimony that the behavior violated SFD policies and stated, "I don't think the citizens expect or deserve that type of behavior from their public servants."

Brandon Edwards, a firefighter, testified on Plaintiff's behalf and stated that he has known Plaintiff for nine years, since they were classmates together, and that they are friends. He stated that several years ago, he and Plaintiff were sharing a house when Lattin came to the residence and attacked Plaintiff, grabbing him from behind, and that she was the aggressor

6

in that particular incident. He also stated that he had never seen Plaintiff abuse a woman.

Shirley Hall, the woman with whom Plaintiff had an altercation outside of Fire Station 7, also testified on Plaintiff's behalf and stated that she was Plaintiff's friend and that the altercation never happened or was misinterpreted. She stated that Plaintiff was only laughing with her over a text message she received and that he got out of her car with her cell phone, and she pursued him to retrieve her phone. She testified that he never struck her or beat her and that she was never interviewed by Chief Wolverton or SFD internal affairs prior to Plaintiff's termination. She stated that she was also charged in the incident, but that neither she, nor Plaintiff, was found guilty.

Plaintiff introduced other witnesses who testified regarding Lattin's character, including Vanity Johnson, Plaintiff's friend; James Johnson, Plaintiff's father; and Kenyatta Robinson, Plaintiff's girlfriend. Robinson testified that Plaintiff had never struck her, and she had never seen him abuse any other women.

Plaintiff testified in his own behalf and stated that he passed all tests, including psychological tests, when he was hired as a firefighter and that he completed all anger management classes to which he was directed. He stated that he and Lattin have ended their relationship and are no longer living together.

A rebuttal witness, Daniel Turner, who was a rookie fireman at Station 7 when the incident with Hall occurred, testified that Plaintiff had finished his shift and had driven to the front of the station. Hall was in her car, and Plaintiff entered on the passenger's side. They suddenly both exited

the vehicle, and Hall was demanding that he return her telephone. At that time, "the pushing and shoving and the little tussling started." He further testified that Plaintiff pinned her up against the vehicle. Although he told his captain that something needed to be done about the situation outside the fire house, a call came into the station at that moment and everyone had to leave to respond to the call. The captain told him that they would have to deal with Plaintiff on the next shift.

After hearing all the evidence, the Board unanimously determined that the SFD acted in good faith and for cause in disciplining Plaintiff. By a vote of six to two, the Board determined that termination was appropriate.

Plaintiff appealed to the trial court and argued that the Board's decision was prejudicial to him and that the findings of Chief Wolverton and the Board were incorrect. The trial court heard the matter and, although it agreed that the SFD acted in good faith and for cause in disciplining Plaintiff, it reversed the termination and imposed a penalty of 90 days' suspension without pay. In so ruling, the trial court noted that the decision of the Board to impose the discipline of termination "was not commensurate with the infraction, and therefore the termination was arbitrary and capricious and manifestly erroneous." The trial court reasoned and specifically found that the City failed to prove by a preponderance of the evidence that Plaintiff's conduct was actually detrimental to, or actually impaired, the efficient operation of the SFD, as is required by the law. This appeal by the City followed.

## DISCUSSION

The City argues that the trial court erred in holding that it failed to prove detriment or impairment to the efficient operation of the SFD by a

8

preponderance of the evidence. It states that the standard of review in cases involving appeals from a decision of the Board is confined to the determination of whether the decision made by the Board was made in good faith for cause, citing La. R.S. 33:2501(E)(3).

The City also argues that the decision of the Board may be overturned by the district court if it is manifestly erroneous or arbitrary and capricious, but it is only arbitrary and capricious if there is no rational basis for the Board's action. If there is a real and substantial relationship between the improper conduct and the efficient operation of the public service, disciplinary action cannot be deemed arbitrary and capricious.

The City further argues that the trial court's decision to amend the discipline from termination to 90 days' suspension without pay and ordering reinstatement retroactively, was manifestly erroneous in that it entitles Plaintiff to full back pay for the three years since his suspension would have ended. It contends that it was an abuse of discretion and not within the trial court's prerogative to amend the discipline imposed by the Board since only the Board has the discretion to make a reinstatement retroactive, citing La. R.S. 33:2501(C)(1).

Plaintiff argues that the Board's decision to terminate him was arbitrary and capricious and the trial court did not err in overruling his termination. He contends that the record lacked sufficient testimony or evidence to show that the appointing authority demonstrated by a preponderance of the evidence that his conduct impaired the efficient and orderly operation of the SFD. He states that at the heart of this case is an allegation by the City that he had a documented pattern of physically abusing women and should have been terminated. He claims that his record

9

shows that he had one prior arrest for domestic abuse battery and disturbing

the peace.  He also claims that all charges against him were later dismissed

and the alleged victim recanted her story.  For these reasons, Plaintiff argues

that the trial court's ruling that the record lacked evidence that his conduct

was detrimental to, or impaired, the efficient operation of the fire department

was correct, and the trial court properly reduced his penalty to 90 days'

suspension without pay.

The initial complaint against Plaintiff charged him with violations of

the following SFD Rules and Regulations and Louisiana statute:

Article 1. Authority, Scope and Application, No. 3, states as follows:

In matters of general conduct not covered herein, the actions of
members shall be governed by the best standards of ethics and
conduct of similar professionals in our region and the best
instincts of law-abiding, self-respecting citizens, always
regarding and upholding the good name of the service of which
each member is an important part.

Article XVI, General Rules, No. 2: Professional Knowledge and

Skills, Part (E) states:

All members shall conduct themselves in such a manner as
approved by Law-abiding, self-respecting citizens.

Article XVI, General Rules, No. 2: Professional Knowledge and

Skills, Part (F) states:

[All members shall] refrain from committing acts which might
bring discredit upon the Department or its members.

 La. R.S. 33:2500(A) provides in pertinent part:

The tenure of persons who have been regularly and
permanently inducted into positions of the classified service
shall be during good behavior. However, the appointing
authority may remove any employee from the service, or take
such disciplinary action as the circumstances warrant in the
manner provided below for any one of the following reasons:

* * *

10

(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.

\* \* \*

(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.

\* \* \*

(14) The willful violation of any provision of this Part or any rule, regulation, or order hereunder.

Appeals of the Board's decision lie directly to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled and are governed by La. R.S. 33:2501, which states in pertinent part as follows:

C. (1) After the investigation provided for in Subsection B of this Section, the board may, if the evidence is conclusive, affirm the action of the appointing authority. If the board finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period, a reduction in pay to the rate prevailing for the next lower class, a reduction or demotion to a position of any lower class and to the rate of pay prevailing thereof, or such other lesser punitive action that may be appropriate under the circumstances.

\* \* \*

E. (3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

Factual findings in civil service cases are to be given deference by a reviewing court. *Morris v. City of Minden*, 50,406 (La. App. 2 Cir. 3/2/16), 189 So. 3d 487, *writ denied*, 16-0866 (La. 6/3/16), 192 So. 3d 748. Review

11

by the district court does not include a trial de novo. *Richardson v. City of Shreveport*, 52,203 (La. App. 2 Cir. 6/27/18), 251 So. 3d 691, *citing McCoy v. City of Shreveport*, 42,662 (La. App. 2 Cir. 12/5/07), 972 So. 2d 1178. The district court may not substitute its opinion for that of the Board. *Richardson*, *supra*, *citing Hawkins v. City of Bossier*, 48,959 (La. App. 2 Cir. 4/9/14), 137 So. 3d 128.

The Board's decision will not be overturned unless it is manifestly erroneous or arbitrary and capricious. *McCoy*, *supra*. La. R.S. 33:2501(E)(3) specifically limits the district court's reviewing authority to determining whether the Board's decision was made in good faith for cause. *Richardson*, *supra*.

Good faith does not occur if the appointing authority acts arbitrarily or capriciously, or as a result of prejudice or political expediency. Arbitrary or capricious means there was a lack of a rational basis for the action taken. *Richardson*, *supra*, *citing Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So. 2d 940. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. *Richardson*, *supra*. The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operation of the public service. *Richardson*, *supra*, *citing Morris*, *supra*.

The intermediate appellate court's review of a civil service board's findings of fact is limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. *Richardson*, *supra*, *citing City of Shreveport v.*

12

*DeBello*, 46,891 (La. App. 2 Cir. 1/25/12), 86 So. 3d 17, *writ denied*, 12-0460 (La. 1/25/13), 105 So. 3d 62.

Although the trial court correctly cited the law pertinent to the review of decisions by the Board and found that Plaintiff was disciplined in good faith and for cause, the trial court incorrectly substituted its opinion concerning the facts of the case when it concluded that the evidence produced at the Board's hearing did not show that Plaintiff's bad conduct impaired or affected the continued efficiency of the public service being rendered by the particular department. The City demonstrated, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operation of the public service. The evidence showed Plaintiff was in violation of several of the rules and regulations of the SFD, that he did not exemplify the best standards of ethics and conduct of similar professionals in our region and, further, was not a law-abiding, self-respecting citizen having regard for the good name of the service. The first action for which he was reprimanded and had to attend anger management classes occurred in February 2015 in front of a fire station. Plaintiff had just finished his shift, but his interaction with Hall was noticed by a firefighter on duty who brought the matter to the attention of the captain. The second action, which occurred in November 2015 and for which he was arrested and had to attend anger management classes again, and which formed the basis for this particular disciplinary action against him, proved that Plaintiff had an established pattern of abuse of women. As Chief Wolverton stated at the hearing before the Board, it is irrelevant that Plaintiff was not actually convicted of domestic abuse, and it is irrelevant that Plaintiff was off-duty when the altercation with Lattin occurred. When the public employee is not

13

law-abiding, violates written rules proscribing the conduct, and his actions reflect poorly on the SFD, there is a real and substantial relationship between the improper conduct and the efficient operation of the public service.

Weighing the facts in this particular matter and the applicable jurisprudence, we conclude that the trial court erred in reversing the determination of the Board, which was made in good faith and for cause. For these reasons, we reverse the finding of the trial court and reinstate the ruling of the Board, terminating Plaintiff's employment.

Because we have reversed the trial court's judgment and reinstated the ruling of the Board terminating Plaintiff's employment, the issue of whether the penalty of 90 days' suspension and reinstatement of employment with back pay was appropriate is now moot.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Plaintiff Skylo Johnson is hereby reversed, and the judgment of the Shreveport Municipal Fire and Police Civil Service Board terminating Plaintiff's employment with the City of Shreveport and its Appointing Authority is reinstated.  Costs of this appeal are assessed to Plaintiff Skylo Johnson.

**REVERSED.**