906 So.2d 610 (2005)
BATON ROUGE POLICE DEPARTMENT
v.
Tommy MORRISON.
No. 2004 CA 0057.
Court of Appeal of Louisiana, First Circuit.
February 18, 2005.
*612 Joseph N. Lotwick, Baton Rouge, for Plaintiff-Appellee Baton Rouge Police Dept.
Floyd J. Falcon, Jr., Daniel L. Avant, Avant & Falcon, Baton Rouge, for Defendant-Appellant Tommy Morrison.
Before: PARRO, KUHN, and FOIL,[1] JJ.
PARRO, J.
This appeal involves disciplinary action taken by the Baton Rouge Police Department (the Department) against Tommy Morrison, resulting in the termination of his employment with the Department. Morrison appealed that decision to the Baton Rouge Municipal Fire and Police Civil Service Board (the Board), which granted his motion for summary disposition on the grounds that the Department had not given Morrison adequate notice before terminating his employment. The Department filed a petition for judicial review of that decision with the district court. The district court reversed that summary disposition, finding that the pre-termination notice was adequate. Morrison has appealed that judgment to this court. After a thorough review of the record, we affirm the judgment and remand this case to the Board for a hearing on the substantive merits of Morrison's appeal.

BACKGROUND
Tommy Morrison was employed by the Department and worked in the evidence room for many years. In early 2000, the Department learned that Morrison and his supervisor had released firearms from the evidence room and given or sold them to various persons in the community, rather than destroying them after they were no longer needed as evidence, as ordered by the court. No evidence release forms were kept to document the disposition of the firearms, which effectively concealed the fact that the firearms had not been destroyed. Based on this information, on March 23, 2000, Morrison was arrested and charged with conspiracy to commit felony theft, felony theft, malfeasance in office, and filing or maintaining false public records. On the same date, Chief of Police Greg Phares relieved Morrison of his duties and placed him on paid administrative leave until further notice. After an internal investigation, his status was changed to unpaid leave, effective April 24, 2000, pending the outcome of a pre-termination hearing. Chief Phares sent Morrison a letter on June 6, advising him of the results of the investigation and notifying him that a pre-termination hearing would be held on June 14, 2000, to consider disciplinary action.[2]
Morrison and his attorney attended that hearing before Chief Phares. Based on Morrison's testimony at that hearing *613 and the results of the internal investigation, Chief Phares concluded that termination of his employment was warranted.[3] A letter advising Morrison of that decision was sent to him, terminating his employment effective June 16, 2000.[4] That letter summarized the factual allegations concerning the firearms missing from the evidence room and the testimony Morrison had given at the hearing. According to the letter, Morrison acknowledged many of the facts concerning the release of the firearms and further admitted that he had sold some of the firearms to other individuals. The letter stated that under subsection 0:0 of the Department's Policies and Procedures Manual and Disciplinary Code, Morrison was subject to disciplinary action for conduct unbecoming an officer, as described in subsection 2:10, and for disciplinary action under the provisions of LSA-R.S. 33:2500(A)(1), (3), and (15). Finally, the letter advised that his termination was effective immediately, and could be appealed to the Board within fifteen days from his receipt of the letter.
Morrison filed a timely appeal to the Board, and asked that the hearing be delayed until the criminal charges had been resolved. After those charges were dismissed,[5] the Board held a hearing on November 15, 2001, at which the only matter presented was Morrison's motion for summary disposition. No evidence was taken on the substantive merits of the termination. The attorneys for Morrison and the Department argued their positions on the adequacy of the pre-termination notice, and the Board summarily disposed of the appeal in Morrison's favor.[6]
The Department petitioned for judicial review of that decision, and the district court ruled in its favor on July 28, 2003. In oral reasons for judgment, the district court stated:
Mr. Morrison was employed by the Baton Rouge Police Department and worked in the evidence room. On March 23rd, 2000, he was arrested on numerous felony criminal charges, which arose in part out of his activities while he worked in the evidence division. He was placed on administrative leave by the Chief of Police and was  and an investigation began. On April 24, 2000, his leave was changed to unpaid leave; and on June 6, 2000, Mr. Morrison was notified of the charges against him.
At the hearing on June 14th, 2000, Mr. Morrison  after the hearing, a pretermination hearing, he was terminated on June 16th. Mr. Morrison appealed and on November 15, 2001, the Board granted Mr. Morrison's motion for summary disposition. The Baton Rouge Police Department asked for judicial review.
The court has considered the entirety of the record. The court, based upon the record, feels that the pretermination letter and the hearing clearly satisfied the case of Cleveland Board of Education vs. Loudermill, [470 U.S. 532,] 105 Supreme Court 1487[, 84 L.Ed.2d 494 (1985)].

*614 Therefore, the Board's decision was not made pursuant to Revised Statute 33:2501(E)(3). Therefore, the court reverses the decision of the Board and upholds the termination.
A judgment in accord with these reasons was signed November 12, 2003, and Morrison has appealed that judgment to this court.[7]

APPLICABLE LAW
The provisions governing the Department's corrective and disciplinary actions against classified civil service employees are set out in LSA-R.S. 33:2500. The sections of the statute cited by the Department in its termination letter to Morrison state:
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
* * *
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
* * *
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
The only statutory limitation on the Department's action is the following:
D. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in *615 writing of the action and the complete reasons therefor.
Under LSA-R.S. 33:2501, any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause may demand a hearing and investigation by the Board to determine the reasonableness of the action. The procedures for the appeal process are set out in LSA-R.S. 33:2501(B)-(E), and include the opportunity for judicial review of the Board's decision by either party.
Where state law provides that an employee is a member of the classified civil service and can only be disciplined for cause, the employee possesses a property right in continued employment and cannot be deprived of this right except pursuant to constitutionally adequate procedures. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 539-41, 105 S.Ct. 1487, 1491-93, 84 L.Ed.2d 494 (1985). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. All the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures. Loudermill, 105 U.S. at 547-48, 105 S.Ct. at 1496.

DISCUSSION
Morrison argues that the charges against him were not specific and did not adequately explain the Department's evidence against him, because the dates of the alleged wrongdoing were not provided, nor is the source of the evidence detailed in the termination letter. We disagree. The factual underpinnings of the alleged offenses were made very clear in the termination letter that was provided to him. That letter summarized the results of the investigation and Morrison's admissions at the hearing. Anyone can determine the basis of the disciplinary action, simply by reading the letter. It stated that after the death of an assistant district attorney in 1997, a number of firearms were found among his possessions. Some of those weapons had previously been kept in the evidence room and, when they were no longer needed as evidence, the court had ordered their destruction. The letter also noted that among Morrison's job responsibilities was the duty to assist in carrying out the destruction of firearms when ordered by the court. Obviously, that had not been done, as the weapons were still in existence. Although "evidence release forms" signed by a judge supposedly had been presented to authorize the release of various firearms to the assistant district attorney, those forms had not been kept, resulting in no accurate permanent record of the disposition of numerous firearms. Therefore, the records being maintained by Morrison in the evidence room, which showed the weapons had been destroyed, were false. Because the releases had not been documented, the Department could not determine exactly how many, when, and to whom weapons had been released.
Based on the allegations in the letter, the Department concluded that Morrison's actions constituted the failure to perform the duties of his position in a satisfactory manner, and referenced LSA-R.S. 33:2500(A)(1) as one of the violations. The letter indicated that Morrison had allowed dangerous weapons to be released from the custody of the Department without advising the court that its order had not been carried out and without any accounting for their future whereabouts. Consequently, the Department concluded that his actions were contrary to the public interest, citing LSA-R.S. 33:2500(A)(3). *616 Such disregard for the law by one charged to uphold and enforce it could undermine the reputation of the Department, and thus the Department could conclude his actions were prejudicial to the Departmentalso a violation of LSA-R.S. 33:2500(A)(3). We find the termination letter more than adequately explained the basis of the charges against Morrison and the reasons for his termination.
Morrison also contends, however, that LSA-R.S. 33:2500(D) requires that the explanation for the termination must be provided to the employee before the termination. We do not find any such temporal requirement in the statute. However, even if we agreed with Morrison on this point, we note that under the facts of this case, he had been charged with criminal felony offenses, had been placed on paid administrative leave and then on unpaid leave, all based on his actions and omissions while working as a Department employee in the evidence room. Accordingly, he had notice that the release of weapons from the evidence room, failure to destroy those weapons as ordered by the court, and failure to document their release were the matters that would be investigated and considered for disciplinary action at the pre-termination hearing. He was duly notified that such a hearing would occur and appeared with his attorney to respond to the Department's findings. He has not alleged that any other, unrelated charges were the subject of that hearing. Moreover, if Morrison had any questions about the reasons underlying the disciplinary action taken against him, he and his attorney had ample opportunity to clarify the situation at the pre-termination hearing.
We conclude that the constitutional requirements were fully met in this case by the notice and pre-termination opportunity to be heard, along with the post-termination appeal procedure. Moreover, we find that the Department complied with LSA-R.S. 33:2500 in taking this disciplinary action against Morrison. Therefore, the district court was correct in its judgment, which reversed the Board's summary disposition of the appeal on the basis of inadequate pre-termination procedures.
However, the merits of Morrison's appeal to the Board have never been addressed and determined. Therefore, we will remand the case to the Board for further proceedings in accordance with LSA-R.S. 33:2501, in which the parties may appear and present evidence to show whether the Department's disciplinary action was reasonable, taken in good faith, and for cause.

CONCLUSION
The judgment of the district court is affirmed. This matter is remanded to the Board for a hearing on the merits of Morrison's appeal.
AFFIRMED AND REMANDED.
KUHN, J., concurs.
NOTES
[1] Honorable Frank Foil, retired from the Louisiana Court of Appeal, First Circuit, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] This letter is not in the record, but both parties referred to it in their pleadings and briefs, and the district court mentioned it in oral reasons for judgment.
[3] There is no requirement that such hearings be recorded or transcribed, and the record does not include a recording or transcription of this hearing.
[4] The termination letter was undated, but both parties and the district court refer to the termination date as June 16, 2000.
[5] The record indicates the charges were dismissed, because by the time the wrongdoing was discovered, the time limit for bringing criminal charges for those offenses had expired.
[6] The record includes a recording and transcript of the very brief hearing before the Board.
[7] In the meantime, however, Morrison took other action to enforce the Board's decision and obtain reinstatement with full back pay and benefits, rather than being reinstated to unpaid administrative leave. He sought a writ of mandamus, which was granted by the district court and affirmed by this court, based on the provisions of LSA-R.S. 33:2501(C)(1). As a result, Morrison's reinstatement was with full back pay and benefits, retroactive to the date of his termination. Morrison v. City of Baton Rouge, 02-0358 (La.App. 1st Cir.12/20/02), 836 So.2d 444, writ not considered, 03-0362 (La.4/21/03), 841 So.2d 777. In that opinion, although this court did not have the issue of the adequacy of the pre-termination procedures before it, nor did it have the transcription of the appeal hearing before the Board, this court observed in dicta:

It is not disputed by the Department that it failed to follow the proper procedural requirements to which the Department must adhere in a termination proceeding pursuant to La. R.S. 33:2501 B(1) and (2). These requirements include notice and the opportunity to participate at a hearing. Given the Department's failure to comply with the unequivocal requirements established in La. R.S. 33:2501, the Board's reinstatement was not legally erroneous.
We are compelled to note that the provisions of LSA-R.S. 33:2501 are not applicable to the Department's termination proceeding, but to the appeal of such a decision to the Board. Therefore, it is not surprising that the Department did not dispute its failure to follow those requirements. Moreover, the Department's failure to comply with those provisions certainly does not answer the question which is now before the court, that is, whether the Department followed the legal requirements for corrective and disciplinary action against classified civil service employees and afforded Morrison constitutional due process when it terminated his employment. Those requirements do include notice and the opportunity to participate at a hearing.