MOORE, J.
L Larry Hawkins appeals a judgment of the 26th Judicial District Court which affirmed a decision of the Bossier City Municipal Fire and Police Civil Service Board (“the Board”) to terminate Hawkins from the Bossier City Police Department (“BCPD”) for failing to have an abandoned car towed from the right-hand lane of Walker Road at Arthur Ray Teague Parkway. Finding no abuse of discretion or denial of due process, we affirm.

Factual Background and Prior Appeal

Around 1:00 pm on June 9, 2011, Sgt. Benjamin England was driving to BCPD to conduct a shift meeting at 2:00 pm. Coming down Walker Road toward Arthur Ray Teague Parkway, he saw an elderly African American man walking east on Walker Road. The man motioned back toward the parkway. Sgt. England then saw a Dodge Caliber stopped in the right-hand lane of Walker Road. Concerned that southbound traffic turning left off the parkway onto Walker Road might hit the ear, Sgt. England called dispatch to report a stalled vehicle. The dispatcher told him someone would be sent, so Sgt. England proceeded to his shift meeting.
At 1:05 pm, Cpl. Hawkins, an 18-year veteran of BCPD, responded to the call about a stalled or abandoned vehicle and the elderly man walking away from it. Cpl. Hawkins got there about 1:20 pm, finding a Dodge Caliber with a flat tire parked in the outside travel lane of Walker Road. He ran the tag number on the Thinkstream system and found the car belonged to an elderly man. Cpl. Hawkins drove to the nearest business, a bank, to see if the *668 owner had come in to seek assistance; he had not. Cpl. Hawkins returned to the Dodge and activated his dashcam to document the abandoned Dear and the “extremely light” traffic. He did not deem it an immediate traffic hazard for that time of day, so he did not call to have it towed.
About this time, Cpl. Wayne Benjamin, who had heard the call, came to the scene to see if Cpl. Hawkins needed help. He promptly told Cpl. Hawkins that he (Hawkins) needed to get the car towed. Because he did not think this was necessary, Cpl. Hawkins called his superior, Sgt. Jeff Gay-dos, for advice. Sgt. Gaydos later testified that based on information provided by Sgt. Hawkins, he thought the car was completely off the road. He asked three questions: was the car (1) a road hazard, (2) blocking traffic, or (3) a vision obscurement to other traffic; Cpl. Hawkins replied “no” to each question, so Sgt. Gaydos told him to leave it. Cpl. Hawkins did so, and left the scene about 1:30 pm.
However, a still image from Sgt. Hawkins’s dashcam, admitted as Ex. C-5, shows the Dodge completely on the travel surface, the right wheels perhaps 4-6 inches from the curb. Around 2:30 pm, another officer, Keith Hardin, drove by and immediately had the car towed.
The next day, BCPD filed a complaint against Cpl. Hawkins on grounds that he did nothing to remove the car from the roadway when it was clearly blocking one lane of traffic. He received an “Internal Investigation Warning” on June 15, and notice of a prediseiplinary hearing on June 20.
The five members of the prediseiplinary panel unanimously sustained the complaint and recommended termination.[1] On July 18, the mayor and chief of police formally notified Cpl. Hawkins that because he failed to “take appropriate action” to remove an abandoned car that was “reasonably | adeemed a traffic hazard” under Gen. Order 05-10, he was terminated immediately.[2]
Cpl. Hawkins then filed an appeal to the Board, which held a hearing on September 21. Six witnesses testified, including Chief Patrick McWilliams, who felt that Cpl. Hawkins’s conduct detracted from the efficient and orderly operation of the department, wasted manpower and exposed BCPD to liability if another motorist had rammed into the abandoned car. The chief also described Cpl. Hawkins’s history of dereliction of duty dating from 1994, including a 30-day suspension in 1998 and a demotion to corporal in January 2011, just months before this incident; an officer with a clean record would not be terminated for merely failing to tow. He testified that Ofc. England, who also failed to tow the Dodge, received only a “letter of documentation” (and a 30-day suspension without pay); he had four prior suspensions, but none for insubordination. The chief also admitted that, to his knowledge, no BCPD had ever been disciplined for failing to tow. The Board upheld the termination, stating the disciplinary action was taken in good faith and for just cause.
*669 Cpl. Hawkins then filed an appeal' in the 26th JDC alleging unequal punishment, violations of the La. Police Officers Bill of Rights, Bossier City ordinances and BCPD general orders, and that his termination was arbitrary and capricious and not in good faith. After a hearing, the district court remanded the claim to the Board to establish a complete record and to allow 14Cpl. Hawkins to present additional evidence, in accordance with Atchison v. Monroe Mun. Fire & Police Civil Serv. Bd., 46,178 (La.App. 2 Cir. 5/4/11), 64 So.3d 874. The city took a writ, which this court denied.
The Board reconvened on March 13, 2013. No official transcript was made, but on the audio recording each Board member read a written statement why he had voted to uphold termination.[3] Cpl. Hawkins introduced Sgt. England’s personnel file; the city introduced Cpl. Hawkins’s. The Board upheld its previous decision and forwarded its findings to the district court.
On July 10, 2013, the district court rendered judgment declaring the Board’s findings supported by “sufficient, legal, competent evidence * * * [and] correct as a matter of law.” Notably, the court did not state that it had considered the un-transcribed audio recording of the Board’s March 2013 hearing.
Cpl. Hawkins took a devolutive appeal, resulting in this court’s original opinion, Hawkins v. City of Bossier, 48,959 (La. App. 2 Cir. 4/9/14), 137 So.3d 128. This court reversed and remanded with instructions for the district court to read the transcript of the audio tape and to allow Cpl. Hawkins to offer any additional evidence to support his claims.

Subsequent Proceedings

The district court set a June 9, 2014, hearing for a “full review of the remand hearing, including the * * * audio recording of that proceeding.” After this hearing, the court found the Board had not complied with the prior judgment, and therefore remanded the matter to the Board. The judgment Instated that the parties could offer evidence not previously admitted, call witnesses to testify (except that no witness who had already testified had to do so again), and introduce the transcript of the Board’s September 21, 2011, hearing.
The Board set its hearing for March 18, 2015. Cpl. Hawkins subpoenaed two witnesses who failed to appear, so the hearing was continued to September 16; the two witnesses failed to appear for this hearing as well. At the hearing, each Board member received copies of the prior decisions, transcripts of the two prior Board hearings, and copies of all exhibits previously introduced. Cpl. Hawkins called one witness, Capt. Randy Rufty, who had been on the predisciplinary hearing panel. Capt. Rufty testified that his initial recommendation had been a 90-day suspension, but he changed his mind and joined the others to recommend termination. He. denied he had been “pressured” to change his vote. Another Board member stated that they had tried to serve the absent witnesses, Sgt. England and Ofc. Szyska, but “did not succeed,” Counsel for Cpl. Hawkins did not move to attach them, hold the record open for their depositions or continue the hearing until they could be located. At the close of the hearing, the Board unanimously approved its prior decisions and affirmed the termination.
*670 Cpl. Hawkins took another appeal to the district court, which held a very brief hearing on January 25, 2016. The city introduced copies of the Board’s prior decisions, transcripts of the three prior Board hearings, and copies of all exhibits previously introduced. The court noted that Cpl. Hawkins “tried to get witnesses to that trial” but they did not appear. However, “based on everything I’ve looked at,” the court found the decision Rwas not arbitrary and capricious, and the Board complied with the court’s prior order. Judgment was rendered affirming the Board’s decision; this devolutive appeal followed.

Discussion: Arbitrary and Capricious Board Action

By his first assignment of error, Cpl. Hawkins urges that his termination for failing to tow a vehicle under these circumstances was arbitrary and capricious, without just cause, and grossly disproportionate to the offense. He contends that no officer should be terminated for failing to tow a disabled vehicle when, in his judgment, the vehicle did not create a traffic hazard and the officer was merely trying to give an elderly citizen a chance to retrieve the vehicle or replace the flat tire. He first argues that Gen. Order 05-10, which he allegedly violated, does not state who decides, when it is decided or how to decide if a vehicle disabled on a public street is “deemed to be a traffic hazard,” and urges that neither he nor Sgt. England considered it a hazard, given the light traffic at the time, the open left lane that drivers could use to get around the abandoned Dodge, and the fact that no accident actually happened. He submits that his conduct was at worst neglect of duty, similar to that found insufficient to support a demotion in Austin v. Department of Police, 2007-1261 (La.App. 4 Cir. 3/5/08), 981 So.2d 42 (a police lieutenant failed to supervise his subordinates, an inmate escaped from the station into a nearby park and was apprehended soon after). He also argues that Chief McWilliams’s concern of potential liability is not a valid ground for discipline, citing Roy v. Alexandria Civil Serv. Com’n, 2007-1458 (La.App. 3 Cir. 4/2/08), 980 So.2d 225 (“An appointing authority may not discipline an employee * * * based on its fear of exposure to potential future liability because of the employee’s alleged propensity for |7violence”). He contests the chiefs belief that Cpl. Hawkins “just did nothing,” when in fact he tried to locate the car’s owner, unsuccessfully, and called his supervisor to say the car was not blocking traffic, was not a vision impairment and not a hazard. He concludes that he did not believe he was violating Gen. Order 05-10, and that as an 18-year veteran of BCPD, he should not have been fired for this.[4]
In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor. La. R.S. 32:2500 D. Disciplinary action will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister v. Department of Streets, 95-0404 (La. 1/16/96), 666 So.2d 641; Lensey v. City of Shreveport, 36,934 (La.App. 2 Cir. 3/5/03), 839 So.2d 1032, writ denied, 2003-0997 (La. 6/6/03), 845 So.2d 1091. The district court should not *671 modify a board’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister v. Department of Streets, supra. Appellate review is confined to a determination of whether the decision made by the board was made in good faith and for cause. La. R.S. 33:2501 E; McCoy v. City of Shreveport, 42,662 (La.App. 2 Cir. 12/5/07), 972 So.2d 1178, and citations therein.
The court does not conduct a de novo review of evidence presented to the Board. McCoy v. City of Shreveport, supra. For this reason, we will not address whether the abandoned Dodge posed, or did not pose, a traffic 18hazard. Our appellate function is limited to determining whether the Board’s action was made in good faith and for cause. In our view, Gen. Order 05-10 leaves some discretion to the officer; Cpl. Hawkins (and Sgt. England) may have used poor judgment in failing to order a tow immediately.
More important, however, is that Cpl. Hawkins called Sgt. Gaydos and led him to believe the Dodge was completely off the road. The image from the dashcam totally refutes this, showing the car completely on the paved surface. Sgt. Gaydos asked three questions reasonably calculated to determine whether there was a traffic hazard under Gen. Order 05-10, and Cpl. Hawkins gave answers that were at best misleading, and at worst false. Making a false report to one’s superiors may indeed be a valid basis for termination of an officer. Wyatt v. Harahan Mun. Fire & Police Civil Serv. Bd., 06-81 (La.App. 5 Cir. 7/25/06), 935 So.2d 849, writ denied, 2006-2322 (La. 12/8/06), 943 So.2d 1091.
Moreover, Cpl. Hawkins had, unfortunately, a substantial history of disciplinary issues in BCPD. In his 18-year tenure, he had 20 Internal Affairs complaints, including 12 for dereliction of duty, and a demotion to corporal just months before this incident. The officer’s significant disciplinary history may well justify the imposition of an action, including termination, more severe than would be expected for an officer with a clean history. McCall v. City of Alexandria, 2010-82 (La.App. 3 Cir. 6/2/10), 40 So.3d 472, writ denied, 2010-1900 (La. 10/29/10), 48 So.3d 1090.
We have also considered whether Chief McWilliams inappropriately considered the potential liability of BCPD for failure to remove a car from the road. Unlike the street superintendent in Roy v. Alexandria Civil Serv. Com’n, supra, Cpl. Hawkins was in uniform and on duty when the incident occurred; his acts could indeed reflect poorly on the efficiency and competency of BCPD. Also unlike the plaintiff in Roy, Cpl. Hawkins was not discharged from his city job merely because of his reputation as a violent person, but because of specific conduct. Critically, unlike in Roy, the Board accepted the city’s rationale for termination. In short, the Board did not abuse its discretion in considering potential liability as part of the overall question whether Cpl. Hawkins’s improper conduct had a real and substantial relationship to the efficient operation of BCPD.
We recognize that termination is the ultimate discipline, and that reasonable minds could debate whether it is the appropriate outcome for Cpl. Hawkins.[5] However, the court should modify the Board’s order only on a finding that it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister v. Department of Streets, supra. In light of Cpl. *672 Hawkins’s misrepresentations to his sergeant, his serious disciplinary history, the drain on BCPD manpower and the potential (if unrealized) liability arising from his failure to act, we cannot say that the Board’s decision was arbitrary, capricious or an abuse of discretion. Moreover, our review does not disclose that the Board acted without good faith and without cause. La. R.S. 33:2501 E(3); McCoy v. City of Shreveport, supra. This assignment of error lacks merit.

Denial of Due Process

By his second assignment of error, Cpl. Hawkins urges he did not receive due process. He advances three arguments. First, he reiterates and | inincorporates by reference all the procedural objections to the city’s and the Board’s actions in handling his discipline, concluding that the records of the three Board hearings do not support the termination. Second, he contends that neither the city nor the Board ever considered or allowed him to introduce evidence of disproportionate treatment.[6] He argues that despite the order directing the Board to consider such evidence, he was “not allowed to call any new witnesses” at the Board’s March 2013 hearing, only to introduce Sgt. England’s personnel file, and argues that his subpoenaed witnesses “were not even present at the hearings.” He submits that the failure to admit evidence relevant to a defense at a civil service hearing is reversible error, citing Golphin v. Division of Admin., 314 So.2d 498 (La. App. 1 Cir. 1975). Third, he contends (at oral argument, for the first time) that he was entitled to a “statement in writing of the action and the complete reasons therefor,” La. R.S. 33:2500 D, but did not receive this. His internal investigation warning and notice of predisciplinary hearing referred only to his failure to tow the car, not to the fact that his disciplinary history would be considered in fashioning the remedy. He submits that this inadequate notice impaired his ability to defend the charges and amounted to a denial of due process.
This court recognized in the prior appeal that the district court had not considered the entire available record, and remanded with instructions to do so; the district court, in turn, remanded to the Board to take additional evidence. Since then, much has occurred. The Board held a hearing, on September 16,2015, at which it received evidence, including the testimony Inof one of the witnesses called by Cpl. Hawkins; this resulted in another vote to approve the termination. The district court held another hearing, on January 25, 2016, at which time it received copies of all the prior decisions, transcripts of all hearings and copies of all exhibits previously introduced. Citing the totality of the evidence, the court found no arbitrary and capricious action. Unlike the prior appeal, the instant record does not show that either the Board or the district court overlooked or declined to consider any evidence that was properly introduced. Even though the process has been long, intermittent and somewhat circuitous, we do not find any structural deficiency. The first argument lacks merit.
As for the second argument, the record simply does not support Cpl. Hawkins’s contention that he was not allowed to call any new witnesses at the March 2013 hearing. Cpl. Hawkins subpoenaed two witnesses who failed to appear; at his request, the Board continued the hearing to September. Then, the same two witnesses again failed to appear.[7] Cpl. Haw *673 kins called one live witness, Capt. Rufty, and presented other evidence. The record does not show that counsel objected, or moved to attach the two missing witnesses, continue the hearing until they could be found or hold the record open for their depositions. Without a timely objection to the procedure, the issue is not properly preserved for appeal. La. C. C. P. art. 1635; Oliveaux v. St. Francis Med. Ctr., 39,147 (La.App. 2 Cir. 12/15/04), 889 So.2d 1264, writ denied, 2005-0454 (La. 4/29/05), 901 So.2d 1067; Lafayette City-Parish Consol. Gov’t v. Francis, 2006-0235 (La. App. 3 Cir. 6/28/06), 934 So.2d 258. The second argument lacks merit.
| ^Finally, the appointing authority is required to “furnish the employee and the board a statement in writing of the action and the complete reasons therefor.” La. R.S. 33:2500 D. To satisfy due process, the employer must give the tenured public employee oral or written notice of the charges against him, an explanation of the employer’s evidence, and the opportunity to present his side of the story. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). All the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures. Id.; Baton Rouge Police Dept. v. Morrison, 2004-0057 (La. App. 1 Cir. 2/18/05), 906 So.2d 610. Nothing in R.S. 33:2500 D requires that a “detailed explanation for the disciplinary action must be provided to the employee by the appointing authority before the termination.” Beck v. City of Baker, 2011-0803 (La.App. 1 Cir. 9/10/12), 102 So.3d 887, writ denied, 2012-2455 (La. 1/11/13), 107 So.3d 617. Cpl. Hawkins should have been aware of his own disciplinary history; moreover, after Chief McWilliams introduced this evidence at the first hearing, there were two additional Board hearings at which he could have attempted to rebut or justify his record. Under the circumstances, the notice under R.S. 23:2500 D did not have to include a recital of Cpl. Hawkins’s disciplinary history or advise him that prior infractions would weigh against him. The third argument lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Larry Hawkins.
AFFIRMED.

. Cpl. Hawkins's appointee to the panel, Ofc. Kary Szyska, added the handwritten notation, "He has shown that he is incompetant [sic] in the simplest duties as a Police ofc.”

. Gen. Order 05-10 states (with emphasis added)-. "The Police Department shall tow vehicles that have been abandoned on public property. A sticker must be placed on the vehicle windshield directing that the vehicle must be moved in ten (10) days (excluding weekends and holidays) per L.R.S. 32:473.1. After ten (10) days, the vehicle may be removed from public property and stored at the wrecker company storage facility, Vehicles deemed to he a traffic hazard shall be towed immediately."

. By this time, the Board had two new members; one of these, a Capt. Woodfin, stated that he voted against termination since Cpl. Hawkins was not the only officer who failed to tow.

. He also argues as part of this assignment that neither the city nor the Board considered, or allowed him to introduce evidence of, disproportionate treatment. As this argument more properly addresses the alleged failure of due process, we will discuss it in the second assignment.

. As noted, Lt. Rufty changed his initial recommendation of a 90-day suspension to termination, at the June 2011 hearing, and Capt. Woodfin voted against termination, at the March 2013 hearing.

. This argument was actually advanced and briefed as part of his first assignment.

. One of the missing witnesses was Ofc. Szys-ka, who had earlier written that Cpl. Hawkins was incompetent “in the simplest duties as a *673 Police ofc.” It is unclear how this witness’s testimony would have benefited Cpl. Hawkins's case.